## WOODS *vs.* BANKS & a.

A charter, granted by the governor of the province of New-Hampshire within the limits of what is now the State of Vermont, cannot be presumed to have been valid and to furnish the foundation of a title, without any evidence of the history connected with such grants.

Matters of history are evidence in certain cases, but when history is relied upon as evidence, if the history is not admitted, it must be shown.

Where certified copies of records are offered in evidence, it should appear that the officer by whom they purport to be certified had the right to the custody of the records, and power to authenticate copies.

Copies of proprietary records which exist in another State, certified by the proper officer having the custody of them, may be admitted in evidence.

Copies of so much of the record as relates to the subject matter of the suit are allowed; but there should be a copy of all the matter made up, and attested at any particular time, unless what relates to the subject matter is a distinct and independent record.

Where the records of a proprietary, showing a division of the lands of a township, are sufficiently authenticated, the acceptance of the charter and a due organization under it may be inferred, nothing appearing to the contrary.

A deed cannot be color of title beyond what it purports to convey.

### Woods v. Banks.

A quitclaim, or release of all the right, title and interest of one who is not shown to have had any color of title or possession, is not color of title.

An entry upon a lot, with a view of taking possession of it under a claim of title, and marking the lines of it by spotting the trees around it, is a sufficient possession of it against one who can show no right to enter upon the land; although, without an actual enclosure, it is not such an adverse possession as against the real owner as to bar his right under the statute of limitations.

Upon such a possession the plaintiff may maintain trespass for an entry upon the land against a wrong doer, or trover for carrying away timber after it has been cut upon it.

If the defendant in such case can show that he is answerable to any other person for the value of the property, that may go in reduction of damages, although he has not actually made any payment.

In order that an admission by an agent may be evidence against his principal, it must relate to the subject matter of the agency, and be within the scope of his authority.

The declarations of third persons are not admissible in evidence as part of the *res gestœ*, unless they in some way elucidate or tend to give a character to the act which they accompany, or may derive a degree of credit from the fact itself. If they can have no effect upon the act done, and derive no credit from it, but depend for their effect entirely upon the credit of the party who makes them, they are not admissible merely because they may have some connection with the act, or relate to it.

TROVER, for two hundred thousand feet of white pine logs.

The timber was alleged to have been cut on lot 26, in the second division in the town of Brunswick, in the State of Vermont, to which the plaintiff claimed title; and to show an allotment of the township, the plaintiff introduced a copy of a charter of the township of Brunswick, granted by Benning Wentworth, governor of the province of New-Hampshire, dated October 13, 1761, to which the defendants excepted that the township was within the limits of Vermont.

It appeared that Abel Camp was one of the original grantees in that charter.

The plaintiff then introduced certain papers purporting to be copies from the records of the proprietors of Brunswick, certified as true copies from said records by the town clerk of the town, who testified that he had the custody of said records. To which the defendants excepted, that the origi-

nal records should be produced, and because said papers were copies only of certain parts of said records, and because it did not appear that said records were in proper legal custody.

In answer to this last objection, the plaintiff introduced the statute book of Vermont, containing a provision making it the duty of the proprietors' clerk, upon the dissolution of the proprietorship of any town by a division of all the lands, or by neglect for ten years to hold meetings, to deliver over the records to the town clerk; but the defendants still objected that it did not appear that the proprietorship was dissolved.

The copies of records thus introduced purported to contain a record of the proceedings at a meeting of the proprietors, July 5, 1787, at which time a committee was drawn to make a first and second division; and of a meeting, November 17, 1787, at which the lots were drawn to the proprietors, lot 26, second division, being drawn to the right of Abel Camp.

The plaintiff also introduced evidence that two of the persons constituting the committee were surveying in Brunswick about 1786, and the testimony of a witness that he was one of a committee chosen to make a third division, about 1823;—that in order to find the undivided land, they were obliged to trace many lines of the 2d division, and found them to correspond very nearly to the plan of Andrew Bears, who assisted in making that division;—and that he had examined the lines of four lots in that division, and found corners. Also the evidence of another witness, that he held several tracts drawn in that division;—that he had been acquainted with the place since 1814, and that he had not heard of any other allotment of the second division than the one surveyed by Bears;—that it had been acquiesced in, as far as he had been acquainted, and that he held several tracts under said allotment, all of which had been occupied more than thirty years.

The defendants objected, that there was not sufficient proof of any organization of the proprietors of Brunswick, or that said votes were legally passed, or that the owners of the lots before mentioned claimed under the proprietors of Brunswick.

The plaintiff then introduced a deed from William Sly-field to himself, dated January 21, 1830, whereby said Sly-field remised, released and forever quitclaimed all his right, title and interest to one undivided third of certain lots in Brunswick, and among others the second and third division right of Abel Camp. It contained no covenants. Also a deed from Jared Wells to himself, dated February 9th, 1835, whereby said Wells remised, released and forever quitclaim-ed all right and title which he had to the second and third division of said Camp, with a covenant that he would have and claim no right in the released premises.

The defendants objected, that it did not appear that the releasors had any title, or had ever had any possession, and that this evidence furnished no color of title to justify any entry or claim by the plaintiff.

The plaintiff then introduced the testimony of Rich Ste-vens that he was employed by the plaintiff in the latter part of 1833 to take possession of said lot 26, in the second divi-sion ; that he spotted the lines of said lot for the plaintiff, and marked one of the corners.

The defendants objected, that it did not appear that there was any line of this lot before Stevens thus made one, and that if the proprietors of Brunswick made an actual location, they were seized, and when they allotted to Camp he be-came seized, and that his title and seizin continue, the plain-tiff showing no title.

The plaintiff then proved that in February, 1837, he sent an agent upon the land to see whether any trespasses were committed ; that the defendants had employed one Elliot to get timber from the lot, and several of his hands were at work upon the lot when the agent came there ;—that the hands loaded a log upon the sled and drew it to the river,

where there was a large quantity of pine timber, and that the agent then marked such logs as they said came from that lot. While on the lot two of the hands said that the timber drawn from that lot was the lowest timber at the river, and this was the timber marked by the agent.

The defendants objected, that the declarations of these individuals were inadmissible.

A verdict was taken by consent for the plaintiff, subject to the opinion of this court upon the foregoing case.

*Perley & Hibbard,* for the defendants. A grant by the government of New-Hampshire out of its limits is void, unless it be recognized by the local government within which it exists. This cannot be presumed. It must be proved. If it be said that it is matter of history that a part of Vermont was granted by New-Hampshire, the history should be shown. If any part was granted, how much was included in those grants?

As to the recognition of the title by Vermont, there is no recognition of title to this lot.

If a jury might find that Brunswick was granted by New-Hampshire, and the title recognized by Vermont, the court cannot find it.

If the proprietorship is dissolved, they forfeit their lands. But the evidence does not show any dissolution. They were acting in 1823. There is the mere omission to act from that time.

The town clerk has no right to the custody of the records, unless the corporation is dissolved and cannot certify copies. It is not shown that they had divided all the land, and it is not to be presumed that they had dissolved without dividing, and thus forfeited their right.

The evidence was not competent to show the location of this tract. There is evidence of a location of other persons, without showing any title in them. Nothing more appears than that they claimed under the proprietors of Brunswick.

If they so claimed, the title should be shown. Besides, this applies to but a small part of the township, and is not connected with lot 26.

The book does not show that the meeting was warned, and there is no general acquiescence shown. If there was, it would only be a circumstance from which a location could be inferred.

The plaintiff had no possession. He must show a title actual or colorable, or else an entry would give no constructive seizin. The plaintiff showed two releases. They do not describe any land. They grant the right of Abel Camp in the second and third divisions. But lot 26 had not then been ascertained. It was marked afterwards.

If the plaintiff entered under one whom he knew to have no title, why should he fare better than if he had no pretence of title? Where one gives a release, and no title is shown, there is no presumption of a good intention. 7 *Conn. Rep.* 250, *Dart* vs. *Dart.* A release is good if the party has title. If he had no title it can pass nothing.

When this land was assigned to Camp he became legally seized. This seizin continues until he is dispossessed. Camp would not be disseized by entry under such a deed of any thing more than what was actually possessed. 14 *Pick.* 224. Marking lines around the lot gave no possession. 4 *Mass.* 416, *Propr's of Kennebeck* vs. *Springer.*

The declarations of third persons were not admissible in evidence. That the persons were found on the lot is no evidence that they had any agency in relation to the logs in question, or that they ever had any thing to do with them. It was at most but evidence of the declarations of an agent whose authority had expired. A declaration of an agent, in order to be evidence, must be made at the time, and be a part of the *res gestæ.* *Story on Agency* 126; 10 *Ves.* 123, *Fairlie* vs. *Hastings;* 1 *Esp.* 37,5, *Maesters* vs. *Abraham.* It is because the statement is part of the act done, that it is allowed in evidence. 1 *Stark. Ev.* 49.

*Jos. Bell & Livermore,* for the plaintiff.   Courts sitting judicially will be bound by the claim made by the government.

It is matter of history that lands now within the limits of Vermont were claimed by New-Hampshire.   From 1749 to 1764 grants were made of townships west of the Connecticut river.   The court know this.   It is matter of history, also, that this town of Brunswick was included in those grants.   *Slade's State Papers* 13.   The constitution of Vermont recognizes those grants.   And see 1 *State Papers* 241 ; 2 *Ditto* 257.

The court will take notice that Benning Wentworth, who was governor in 1761, was exercising the power to make grants.   It is sufficient that the government of New-Hampshire made a claim to those lands and granted them.   If history shows that this claim was abandoned, it shows also why it was abandoned.

The original records are not the proper evidence.   The records are local in their character, and are not to be removed.

The copies are entire as far as they go.   Copies of whole records are not required.

The records are in the proper legal custody.   The Vermont statute shows that this custody might be legal.   There are two cases under the statute in which this custody of the town clerk would be lawful.   The court will not presume that it is not rightful.

Proof that the town was organized is never required.   All that is required by law appears by the record to have taken place.

The plaintiff is not making out an absolute title.   If he was, some of the objections would be valid.

The deeds to the plaintiff furnish evidence of title.   A naked transfer is sufficient.   The words remise, release and quitclaim are good to pass an estate.   There is a sufficient authority to enter.   Any thing that would pass the title if

Woods *v.* Banks.

the grantor had it, gives a right to enter. If the plaintiff entered in 1833 under such a deed, that is enough.

The evidence of what Elliot's hands said, was rightly admitted. Elliot and his men were on the lot cutting timber. What they said respecting their employment is evidence. 3 *Stark. Ev.* 1302.

The plaintiff claims to support his action on the ground that, as against the defendant, he is the owner. The charter is well shown. Camp was a grantee. Lot 26 was set to Camp. Slyfield conveyed this. The plaintiff entered and cut timber before the defendant. This gave him a valid possession, as against the defendants.

*Perley*, in reply. Where conflicting existing claims are set up by the government, the doctrine of the other side is correct. Here the State abandoned. There is no presumption that those who resisted and threw off this claim have recognized the grant made under the claim. The citation of State papers cannot be offered to the court. History goes to the jury as a fact. All the grants made by the government have not been recognized. The earliest act shown on the part of the plaintiff relative to the division of this township, was in 1786. An organization is not to be presumed under the grant in 1761. The votes do not show acquiescence in these grants.

There is a lot 26 in Brunswick located. But that was not granted or released to the plaintiff. The conveyance is of the right of Abel Camp. His right must be shown by record evidence.

When they marked the lines and when they cut timber, they went off and thus abandoned possession, unless they had color of title.

PARKER, C. J. Matters of history are evidence in certain cases, but if the history is not admitted it must be shown. 1 *Stark. Ev.* 62. Here nothing was offered. The charter

granted by the provincial governor of New-Hampshire cannot be presumed to have been valid in what is now Vermont, without any evidence upon the subject, if the matter is contested. The court are not to take judicial notice how far those grants extended, and how far they have been acted under, and furnish the foundation of the titles there. Some evidence should have been offered on this point.

Where certified copies of records are offered, it should appear that the officer by whom they purport to be certified had the right to the custody of the records, and was the person who had authority to furnish authenticated copies. The statute of Vermont, to the evidence of which no objection was taken, shows that town clerks there have the lawful custody of such records in certain cases, but it did not appear that this was such a case.

Where proprietary records are evidence, copies, certified by the officer having the lawful custody of them, have been admitted here; and there seems to be no reason for a different rule in relation to proprietary records which exist out of the State.

Copies of records existing out of the State, where the records are material, may be used also; because the originals are not within the jurisdiction and cannot be produced. A copy of an account on the books of a corporation has been held admissible. 8 *N. H. Rep.* 334, *Burnham* vs. *Wood.*

In admitting copies of records it would be absurd to require a copy of the whole book. Copies of so much of the record as relates to the subject matter of the suit are allowed. But there should generally be an entire copy of the proceedings of a particular meeting, or any thing else done and transacted at a particular time. Records are usually in parts, and there should be a copy of all the matter made up and attested as a record at any particular time, so that the jury may have the whole evidence, and the courts be enabled to give the right construction to what was done. But where what relates to the matter in question is a distinct and independent record, a copy of that is sufficient.

If the records had been sufficiently authenticated as the records of the proprietors of Brunswick, the acceptance of the charter and organization under it might have been inferred, nothing to the contrary appearing. "Acts done by the corporation, which pre-suppose the existence of other acts to make them legally operative, are presumptive proofs of the latter." *Angell & Ames on Corp.* "Grants and proceedings beneficial to the corporation are presumed to be accepted, and slight acts on their part, which can reasonably be accounted for only upon the supposition of such acceptance, are admitted as presumptions of the fact." 12 *Wheat.* 70, *Bank of U. S.* vs. *Dandridge.*

"A charter may be presumed to have been given to persons who have long acted as a corporation, and assumed the exercise of the powers of a corporate body." "Yet the very case supposes that no written proof can be adduced of a charter or of a vote of the corporators to accept the charter." *Ditto* 71.

"Where persons composing an intended corporation act under the charter, it amounts to an acceptance. It is usual, whenever a charter is pleaded, and no direct and express acceptance can be averred, to show such usage as could not have prevailed unless it had been received, and from which the court may necessarily infer an acceptance." *Angell & Ames on Corp.*

The evidence that the grantees named in the charter of the township in this case were acting under it, by making a division of it to the grantees, would be sufficient evidence of the acceptance of the charter by a due organization within the principle, nothing appearing in conflict with such presumption.

They were dividing to those named as proprietors.

It is not shown, however, that they divided this particular lot to any one.

And the plaintiff did not show any color of title to the lot in question by the deeds produced. A deed cannot be color

of title beyond what it purports to convey. The deeds to the plaintiff are merely releases of the right, title and interest of the grantors, Slyfield and Wells. They are color of title, therefore, not to lot 26, but only of the interest of Slyfield and Wells in the second and third division to the right of Camp, of which this lot 26 was a part. As it does not appear that Slyfield or Wells ever had any title derived from Camp, or were ever in possession claiming under him, these deeds form no color of title to sustain the plaintiff's action. If they had nothing in the land, nothing passed or purported to pass by their deeds. 7 *Conn. R.* 250. And they furnish no evidence of the character or extent of any possession of the plaintiff for which color of title may be used. 4 *N. H. Rep.* 375. No disseizin of the true owner, except at his election, would arise from an entry under such deed without open, visible possession. 14 *Pick.* 224.

The next question is, whether the entry made by Stevens in 1833, by direction of the plaintiff, and his spotting the lines of lot 26, amount to a possession which will enable the plaintiff to maintain an action against one having no better title. In other words, whether this can be regarded as a possession of the lot.

The defendants object that if the proprietors allotted to Camp, he became seized, and that his title and seizin continue. It is true that if neither of these parties show title, the title may be in the proprietors of Brunswick, or in Camp or his heirs, if duly allotted to him.

But prior possession under claim of right has often been held good against a mere subsequent possession, without other evidence. 3 *N. H. Rep.* 26; *Ditto* 50, *and auth. cited.* The fact that a proprietary, or some person under them, may be shown to have formerly had a legal title, is not such evidence of title in a third person as to rebut the claim derived from such prior possession. It does not rebut the seizin of the party, because he shows himself to have been actually seized. 4 *Johns.* 211, *Jackson* vs. *Harder.*

If, therefore, the entry of Stevens upon the land, and the marking the lines of the lot by direction of the plaintiff, can be regarded as a possession of the whole lot, the plaintiff shows a title which is good against the defendants, who offer no evidence of title and are not shown to have entered until 1836 or 1837.

Prior possession, claiming title, if not of such a character as to be adverse to the true owner, except at his election, is, it seems, not only sufficient to entitle the party to maintain ejectment against one who subsequently enters, but he who so enters is denominated a trespasser upon him who is in possession.

Trespass may be maintained as well as ejectment.

The evidence of actual possession in this case is of the slightest character, but it seems to be sufficient. 2 *N. H. Rep.* 456, *Wendell* vs. *Blanchard.*

Stevens, by direction of the plaintiff, with a view of taking possession of the lot, and under a claim of title, marked the lines of it ; and this possession thus taken is good against one who can show no right whatever to enter upon the land.

It is not necessary to cultivate, or to build a fence, in order to take possession of land. An actual *pedis possessio*, with a marking of the boundaries by definite and distinct monuments, is good against one who subsequently comes, without any evidence of a right, to enter, and will entitle the party who has thus taken actual possession to maintain an action of trespass.

If the defendant can show that another has a better right than the plaintiff, who has thus taken possession but shows no other title, this may perhaps avail in the reduction of damages.

If the party in possession has not a title adverse to all others, any one who enters upon him and does a permanent injury to the freehold, must be liable also, it would seem, to the action of the lawful owner for such damages as he has sustained by the entry.

There is no principle upon which a mere disseizor can oust the true owner of a right to recover damages for an injury to his land, by instituting an action and recovering them himself.

It is not necessary, however, to pursue this consideration of the right to damages farther at this time.

The plaintiff's possession is *prima facie* evidence of title. There is nothing in the case now to rebut it. The defendants show no pretence of title under which to justify their subsequent entry. The proprietors of Brunswick do not seem to have asserted any right for a long period. There is matter in the case leading to an inference that the proprietary has long since been dissolved. Nor does Camp, or any one claiming under him, appear ever to have asserted any right to this lot, or to have taken any possession of it. There is in fact nothing to lead to a supposition that the defendants can be made liable to the action of any other person. The possession of the plaintiff, then, and the evidence of title which it furnishes, stands wholly unimpeached, and entitles him not only to an action of trespass, to recover damages for any injury done to the possession, but also to an action of trover, for the conversion of logs cut upon the land; and on the evidence before us he may recover the value of such as have since been taken by the defendants.

But the evidence of the declarations of the laborers were not competent evidence to show that the logs which lay by the river had been cut upon this tract. They were not made by any agent of the defendants, having authority to make admissions in that particular. Elliott appears to have been employed by the defendants to cut and haul timber from the lot. The persons whose declarations were offered in evidence, were his servants merely for that purpose. If the declarations may be said to relate to the subject matter about which they were employed, (that is, the cutting of the timber,) they were not within the scope of any authority they possessed. *Story on Agency*, § 134–139.

" The mere assertion of a fact cannot amount to proof of it, though it may have some relation to the business in which the person making that assertion was employed as agent." 10 *Ves.* 123, *Fairlie* vs. *Hastings.*

Nor were they admissible as part of the *res gestæ.* They did not tend to elucidate or give a character to any thing which was done at the time, or to the possession of those who made them ; nor did they derive any credit from those acts or that possession, but depended for their effect entirely upon the credit of those who made them. 8 *N. H. Rep.* 260, 262, *Gordon* vs. *Shurtleff ;* 9 *N. H. Rep.* 271, 276, *Sessions* vs. *Little.* There was a large quantity of pine timber on the bank of the river. The evidence that the part of it which they pointed out came from this lot, depended upon their veracity. The acts done gave no particular credit to their declarations.

For these reasons there must be a

*New trial.*