PEMIGEWASSETT BANK *v.* ROGERS & a.

The declarations of individuals, who are directors of a bank, not forming a part of an official act, are not admissible to prove an antecedent fact against the bank.

A note, given at the request of a director of a bank, for money which he owed the bank, exceeding the amount of one half his stock, and which the statute of July 3, 1841, prohibits him from owing, is not void; although the directors, when they received the note, had knowledge of all the facts.

ASSUMPSIT, for money had and received. The general issue was pleaded.

In support of the action the plaintiff offered in evidence a promissory note, dated June 5, 1843, signed by the defendants, payable to the plaintiffs, or order, on demand, with interest after sixty days, for the sum of $1400, on which was indorsed at date, $62.77. Two of the defendants, Morrison and Perkins, signed as sureties. The defendants stated their defence to be (among other things) that the note was in reality given for the debt of John Rogers, who was at the time a director of the bank; that it was made in evasion of the statute prohibiting directors of banks from being indebted to the banks of which they are directors, beyond a certain amount; that this was known to the bank, and that the note was in fact the debt of J. Rogers, and was treated as his paper by the bank and by him.

To maintain this defence the defendants introduced the testimony of David C. Webster, who stated that he signed a note with Samuel Rogers and James Morrison, two of the defendants, payable to the bank.

It was agreed by the parties that this note was dated September 27, 1841, and that it was for the sum of $1200.

The witness further stated that he signed this note at the request of John Rogers, and that Rogers said that on

account of a recent law going into effect, he wished to make some changes in his paper, and that he did not intend it should lie long.

He further testified that he subsequently applied to John Rogers to have his name taken from the note, and that William W. Russell, who was a director of the bank, came to him and stated that Rogers would take the note up soon, and wished the witness to wait a little longer; and that Russell also said that he wished the witness would wait.

He further testified that his father, William Webster, was at that time a director of the bank, and that he had certain conversations with his father about the note; that he told his father he was liable to the bank on a note of John Rogers; that his father subsequently asked him once or twice if he had got his name removed from Rogers' note.

He further testified that he afterward inquired of William Green, the cashier of the bank, whether his name was removed from the note, and was told by him that a new note had been taken, with Perkins' name in his stead.

To the testimony of this witness respecting the declarations of W. W. Russell, William Webster and William Green, the plaintiffs objected, but it was admitted, subject to the exception.

The defendants introduced the testimony of Luther M. Knight, that, about a year since, Dr. Burns, one of the directors of the bank, stated to the witness that if the bank had complied with his advice, sundry individuals would not have suffered as they did; that he had urged that Mr. Rogers should pay his paper. The witness further testified, that at the last November term, Dr. Burns informed him that he had urged upon the directors, Thompson and Quincy in particular, the propriety of having Mr. John Rogers' paper removed from the bank

and paid in cash; that they said if he would keep still they would make him pay in twelve per cent every six months, and that he told them he would never consent that Rogers' paper should lie there, trusting to Rogers' promises. To this testimony the plaintiffs objected, but it was admitted, subject to the exception.

The defendants also introduced the testimony of William A. Smith, that, in November last, William Webster said that they considered the note to be Rogers' note to pay, and that if Rogers had had the means they should not have called upon the signers to pay; and that Morrison was present. To this evidence the plaintiffs objected, but it was admitted, subject to the exception.

The defendants offered the testimony of John Rogers. The plaintiffs objected that he was interested in the event of the suit, but the court admitted him as a witness. His evidence tended to show that the note for $1200, signed by Samuel Rogers, Morrison, and D. C. Webster, was given by his procurement, to take up a note which the bank then held against him, and that the note in suit was substituted for that, with the assent of the directors; that the reason of giving the note of $1200 was the law which had been passed in 1841, relative to the indebtedness of bank directors — he being then, and when the note in suit was made, a director of the bank; that he owned fourteen shares in the bank, on each of which $53.50 had been paid, and had had a loan from the bank on his own note, on which his shares were pledged, amounting to $325, and that he thought that when the note in suit was discounted, to take up the other, he stated that it was his to pay. He further stated that Thompson, Webster, Russell, and himself, four of the directors, assented to the discount of this note.

To this evidence the plaintiffs objected, that the books of the bank should be produced to show the acts of the

directors; but the court overruled the objection. Upon the note itself was a memorandum, " dis'd to renew."

" W. C. T.

W. W. R.

W. W.

J. R."

The court, for the purposes of this trial, instructed the jury that if they believed John Rogers was indebted to the bank before the note of $1200 was executed, beyond the amount of fifty per cent upon the amount of his stock, and that that note was given on account of the passage of the statute of July 3, 1841, with the understanding between the directors of the bank and Rogers that it was procured by him as an accommodation note, and as a substitute for his own note, and that he was to settle and pay it,—and if they believed, further, that the note now in suit was substituted for the note of $1200 by his procurement, with a like understanding, and was beyond the amount which he might be indebted,— the transaction was prohibited by law, the note void, and the defendants entitled to a verdict.

To this direction the plaintiffs excepted, and a verdict was then taken, by consent, subject to the opinion of the court upon the foregoing case.

*Perley* and *Quincy*, for the plaintiffs, cited 2 N. H. Laws 539; Cowp. 793; 2 W. Black. 1793; 4 Wend. 394; 14 N. H. Rep. 101, *Woods* v. *Banks;* 3 Day 493; 3 Cow. 623; 3 Mass. 385.

*Hibbard* and *Wilcox*, for the defendants, cited 17 Mass. 258, 281; 13 Pick. 518; 22 do. 181; 3 Met. 581; 14 Mass. 322; 5 do. 286; 4 N. H. Rep. 288; 5 N. H. Rep. 196; 6 N. H. Rep. 33; 1 Greenl. Ev. 130–3; 2 Stark. Ev. 23; 10 N. H. Rep. 377, *Pray* v. *Burbank;* 1 M. & S. 593; 3 B. & Ald. 179; 5 N. H. Rep. 553; Cowp. 112, 770; 1 Greenl. Ev. 208, and note; 1 Phil. Ev. 90, 91; 1 Greenl. Ev. 203.

WOODS, J.   The defence set up in this action is that the note in suit was given for the debt of John Rogers, who, as a director of the bank, is prohibited by law from being its debtor to the extent that this note, if due from him, would make him.

To show that John Rogers is really the debtor, the defendants attempt to prove that the note was given as a substitute for one upon which the name of John Rogers stood as the principal promisor, and that the directors of the bank regarded him in fact as the party really indebted, after the change of securities as well as before ; that he was the party for whose accommodation the present note was given, and for whose convenience the collection of it had been delayed, and whose circumstances were considered in all that was done, or deliberately forborne by the bank with respect to the note, while he remained in a condition of apparent solvency.

To prove this connection of John Rogers with the note, evidence of the declarations and written acts of several of the directors of the bank was produced, and admitted at the trial ; and the question first to be considered is, whether it was properly admitted to prove the facts for which it was adduced.

One may be expressly delegated by another to make an admission in his behalf; and then the effect of the admission upon the principal is perfectly clear.   Or he may be delegated to do a certain act, or to conduct a certain business of such a nature that its due and ordinary prosecution may require concessions to be made by the agent, in the exercise of the discretion which it becomes his duty to use in the conduct of the business entrusted.   Admissions of this description are just as binding upon the principal as those which are made by himself in person, or by another under his specific instructions.   Another condition in which the words of an agent are imputed to the principal, is where they accompany and form a part

of the act which he performs in his vicarious capacity; and it is the same whether the *res gestæ* is one that is specifically authorized by his instructions, or is one which he performs in the exercise of the general discretion intrusted by his principal. 1 Phil. Ev. 101; 1 Greenl. Ev. sec. 113.

Of the character and force of words accompanying and forming part of a *res gestæ*, a strong example is put in *Baring* v. *Clark*, 19 Pick. 222, in which the words of one who had been accredited by the defendant as his general agent, or manager, were admitted in evidence, upon the ground that he was acting and speaking for the defendant, under and within the general scope of his authority. Application on behalf of the plaintiff had been made to the agent of the defendant, to carry into effect a certain arrangement which the latter had made with the plaintiff. In declining to do this the agent assigned for his reason that the money which had been received on the plaintiff's letter of credit had been appropriated contrary to the faith of the arrangement. The reception of the money and the manner of its misappropriation were the material facts in the plaintiff's case; and were held to have been well proved by the admissions of the defendant's agent, without calling the agent himself.

The decision of that cause may well be sustained upon principles which come far short of comprehending the case made by the defendants here. What was said did not accompany or form any part of any official act of either of the directors, or of the cashier, Green. This person told the witness that his note, about which he made inquiry, was paid by that of Perkins, now in suit. If Green knew that fact he might so testify. It was not in his power to agree in behalf of the bank that such fact should, for any purpose, be conceded. It is not the business of the cashier to answer such questions at all. Had the witness been able to testify to the fact of the discount

of the new note and the surrender of the old, then what the cashier said, accompanying those transactions, would have appeared in a different aspect. But to his narrative of a past occurrence no faith is to be given beyond that which is accorded to the narrative of any other person not under oath. *Gline* v. *Western Railroad*, 8 Met. 44. So it may be said of the declarations of Russell, Webster and Burns. They were loose and casual expressions, in no one case forming any part of an official act of either of those parties. Had the change of the securities and the subsequent recognition of John Rogers as the debtor been facts affecting those declarants personally, those declarations, so far as they related to those facts, would have been pertinent. But the bank, that is, the corporation, is a stranger to those declarations. This party never authorized the directors to make such. Nor is there any evidence that they were made in connection with the discharge of any duty that their office imposed on them, and whose proper and efficient discharge according to the reasonable discretion vested in the directors, required the admission or denial of such facts under the circumstances under which the admissions were shown to have been made.

Had the directors, as a board, for the purposes of this case, or for any other purpose connected with their duties, seen fit to make an official declaration of this sort, that would have presented a different question. *Woods* v. *Banks*, 14 N. H. Rep. 101.

But another and more important question is, whether the note declared on is, upon the facts found, a void or a valid security. It bears date the 5th day of June, 1843, and was given in lieu of, and as a substitute for, or a renewal of a note for $1200, of the date of September 27, 1841, signed by the defendants, Rogers and Morrison, and by David C. Webster, payable to the bank; and this last named note was given to pay and take up a note which

the bank then held against John Rogers, who was at that time a director, and indebted to the bank beyond the amount of fifty per cent of his stock. The note was given in consequence of the passage of the act of July 3, 1841, and with the understanding between the directors of the bank and John Rogers, that it was procured by him as an accommodation note, and as a substitute for his own, and that he was to settle and pay it. The whole question is, whether this note of September 27, 1841, was, upon these facts, a valid note or a void one; for the note in suit being a substitute for that, and resting upon the same consideration, must stand or fall according as that shall be found to have been a valid contract, and binding upon the parties, or a contract prohibited by law, and therefore void.

The validity or invalidity of the note of September 27, 1841, depends upon the true construction of the act of July 3, 1841, and its operation upon that note. Was the transaction which was the occasion of the making that note, and which formed its consideration, one that was prohibited by the statute in question; and was the note a prohibited contract?

By the first section of the act it is provided, " that if any director of a bank in this State shall, at any time after the passage of this act, be indebted or liable to the bank of which he is director to an amount greater than fifty per cent of the capital stock in said bank, of which such director is the *bonâ fide* holder in his own right, whether such indebtedness or liability may be by reason of any note, bond, obligation or other instrument in writing, or by reason of any other promise or undertaking whatever, it shall be unlawful for such director to exercise his office of director of said bank, or to do or perform any act or thing pertaining to said office, or to his duties as such director, so long as said indebtedness or liability continues to an amount greater than said fifty per cent of said

stock; and if such director shall, at any time while his said indebtedness or liability continues as aforesaid, exercise said office of director of said bank, or do or perform any act or thing pertaining thereto, or to his duties as such director, he shall, for every such offence, forfeit and pay the sum of $500," &c.

This section does not prohibit or render void any note or other contract existing at the time of the passage of the act, or subsequently assumed or entered into by any director of a bank, but only prohibits and renders unlawful any official act of any director indebted to the extent pointed out, so long as such indebtedness continues, and imposes a penalty for the offence. Its entire and exclusive aim is to restrain persons who are the debtors of the bank beyond a certain proportion to their interest in its stock from participating in the management of it.

The provision of the second section is as follows: "That after the first day of October next [1841] it shall be unlawful for any director of a bank in this State, by reason of any note, bond, obligation, promise or undertaking whatever, thereafter made or assumed, to be or become indebted or liable to the bank of which he is director, to an amount greater, at any one time, than said fifty per cent, &c.; and if, after the said first day of October next, any such director shall make or assume any note, bond, obligation, promise or undertaking whatever, by reason of which he shall be or become indebted or liable to the bank of which he is director, to an amount greater than said fifty per cent of his said stock therein, then such director shall, upon conviction thereof upon indictment, be fined in double the amount of said indebtedness," &c.

This section has for its object to prohibit any director to become indebted or liable to the bank to an amount exceeding half his stock, by any note, bond, or any other promise or undertaking whatever. It may be conceded,

that any such promise, written or unwritten, would, by force of the statute, be wholly void.

But such is not the note under consideration, which is not the evidence of any liability whatever on the part of Rogers. It has taken the place of a note upon which he was, at the time of the exchange, legally holden ; but he is not a party to this in any form whatever, nor in any way liable to the bank by reason of it. If he has assumed, in any way or manner, to pay the sum secured by it, such an undertaking is against the prohibition of the statute, and therefore not binding on him ; but it is wholly collateral to the note, and independent of it, and whatever infirmity or taint it may possess cannot contaminate that security.

In short, all that this section of the statute forbids is the indebtedness or liability of the directors. No director appears to be made liable by the terms of this note. The security, therefore, does not come within the prohibition of the statute.

All that John Rogers did was to procure these defendants to give a note to the bank as a substitute for his. The section referred to does not prohibit this. He could not have been indicted for such an act. Neither does it prohibit others from giving their notes in the place of his, if they are willing to do so. No penalty is provided for such an act.

By the third section it is enacted, " That if any promise, contract, agreement or undertaking shall be made or entered into by any director of a bank in this State, whereby such director promises or assumes to indemnify another person, in whole or in part, against any liability which such other person may incur, by reason or on account of any debt or liability to said bank, or whereby such director subjects himself to any liability by reason or on account of said debt or liability to said bank, or by reason or on account of any contract, promise or under-

taking of such other person, having reference to said debt or liability to said bank, such promise, contract, agreement or undertaking, so made or entered into by said director, shall be deemed and taken to be wholly unlawful and void : *provided, however,* that the provisions of this section shall not be held to apply to any contract, promise, agreement or undertaking, relative to any bill, note, draft or other instrument, held by said bank, upon which such director is liable as a party thereto."

The terms of this section of the statute are perfectly explicit, and its objects plain. It renders unlawful and void the contract of any director of a bank to indemnify persons for assuming any debt or liability to the bank, on which the director is not himself holden as a party.

It is the contract of indemnity, then, which the director is restrained from making for the benefit of those who may be induced, contrary to the policy of the law, to assume debts and liabilities to the bank, except only in cases in which he is himself a party to the paper.

The first section of the statute prohibits directors of banks from acting as such, while they are debtors to an amount exceeding half their stock.

The second section restrains such officers from becoming in any manner indebted to the banks of which they are directors, after the first day of October, 1841, in sums exceeding the amount of half their stock, and imposes a penalty for each violation of the rule.

The third section makes unlawful and void, in express terms, any promise or undertaking of. such director to indemnify those who may assume to pay any debt to the bank, or incur any liability to the bank ; and all undertakings whereby such directors incur any liabilities on account of the debts and liabilities of such other parties to the bank, are void.

Now, the note in controversy in this action is not comprehended in any description of contracts inhibited by the

statute. It is not a contract by which a director becomes indebted to the bank to an amount exceeding the limit assigned by the law. It is not a contract of indemnity, such as is prohibited by the law, undertaken by the director in favor of such as have assumed debts to the bank to which he is not a party.

It is perhaps one of those contracts or debts assumed by the defendants to the bank, against which a director cannot legally undertake to indemnify them. It is perhaps precisely the kind of contract which the statute intended to discourage; not, however, by declaring it to be unlawful and void, but by depriving the parties to it of the indemnity which formed the consideration and inducement for their entering into it. It was entered into by the defendants at the instance of John Rogers, who has induced them to give the note in exchange of one upon which he was liable, and in exoneration of his indebtedness to the bank. But this is not forbidden by the statute; its policy and design did not extend so far as to make such a contract unlawful and void.

The object of the statute undoubtedly was, to prohibit persons entrusted with the management of banks, as directors, from appropriating to their own use the funds of the banks entrusted to their care, and so rendering them unsafe or insolvent, or at least unable to afford others than the directors the advantages of bank accommodations to an extent desired.

To effect such purposes it seems to have been deemed sufficient to impose penalties upon such as shall act as directors, while indebted beyond a certain limit to their respective banks; to prohibit, under penalties, directors of banks from becoming indebted beyond the same limit, and to render, by implication, such contracts void; and to prevent and frustrate all contracts which directors of banks may make for the indemnity of those who may assume debts and liabilities to such banks, and leaving all

Pemigewassett Bank *v.* Rogers.

such debtors remediless, by the express terms of the statute.

If the means adopted have in this instance proved insufficient for effecting the general intent and purpose of the legislature, it is not the office of the court to endeavor to effect them by means not pointed out by the law. Here is a contract which tends to defeat the general object intended to be accomplished by the statute. It is a contract which the statute appears to have been designed to prevent from being made. But while it is apparent that the design of the legislature was to prevent these contracts, it is very certain that the means by which they intended to do so are no other than those indicated by the statute, and already mentioned. By declaring all notes, like the one in controversy, void or illegal, a greater mischief might follow than can result from the law as the legislature have left it. That body have deemed it a sufficient discouragement of such contracts to avoid and frustrate the promises of indemnity which are supposed, in most cases, to form the consideration, inducement and indemnity upon which they are made, and without which it may, in general, be presumed that they would not be made.

The verdict must be set aside, as well upon the ground that incompetent evidence was admitted, as for the reason that the instructions to the jury were erroneous.

*New trial granted.*