## WHITEHOUSE *v.* BICKFORD.

Where the question at issue between the parties was the true locality of the line between the towns of T. and O., which was a line running from the corner of the town of T. to the corner of the town of M., and the locality of a portion of said line running from the corner of each of said towns, in a straight line towards the corner of the other town was not in dispute, but the part of said line between the termini of said two straight portions of said line was in dispute ; and there was evidence tending to show that a line extending from the terminus of one of said straight lines for some distance, not in a straight line towards the terminus of the other undisputed portion of the line, but diverging from a straight line, was the line agreed upon and established by the proprietors of the towns of T. and O., it was *held* that it was competent for the jury to find said diverging line to be thus far the true line between said towns, notwithstanding said diverging line, if extended in the same direction in which it was shown to run, would not strike the terminus of the other undisputed portion of the line.

Where a plan, purporting to be the plan of a survey of certain one-hundred acre lots of land in O., was offered in evidence, and its genuineness and authenticity were controverted, and it was shown that the plan was found in the custody of the acting clerk of the Masonian proprietors, having the custody of the records of said proprietary, and was delivered out by him, at his office at P., in this State, as an original plan, and as part of the proprietors' records, and was produced in court by the witness of these facts, and purported upon its face to be an ancient plan, bearing the date of 1781, and purporting to be signed by James Hersey, surveyor, and was accompanied by a certificate attached to it, signed by said clerk, it was *held* that the genuineness and authenticity of the plan was sufficiently shown to entitle it to be laid before the jury, in proof of such facts as it was otherwise competent to show.

A copy of the record of the votes of the proprietors of common and undivided lands in this State, duly certified by the clerk of said corporation, is admissible as evidence thereof.

Where the proof may be by a copy, an examined copy, duly made and sworn to by any competent witness, is always admissible.

A copy of so much of the record as relates to the subject-matter of the suit, is allowable.

TRESPASS *quare clausum.* The writ was dated March 13, 1852. The *locus in quo* was described as " a remnant or gore, containing sixty-nine acres, more or less, lying in the northeasterly division of Tuftonborough, and on the line dividing the same from the town of Ossipee."

The plea was the general issue, accompanied by a brief statement, setting forth that the cutting was done on No. 11 of the hundred-acre lots in Ossipee, to which the defendant had good right, claiming under one Merrill Cram.

It appeared in evidence that the plaintiff was the owner of the gore in Tuftonborough, as set forth in his writ, and that Cram was owner of No. 11 of the hundred-acre lots in Ossipee, and that the cutting was done by the defendant under Cram. It appeared, also, that the gore and No. 11 were adjoining lots, and that the true dividing line between them was the line between the towns of Tuftonborough and Ossipee. It appeared, further, that the line between the two towns run from a corner of Wolfborough to a corner of Moultonborough; that, commencing at the corner of Wolfborough, there was a well traced, spotted line between the towns, which run some distance on a straight course, and was so far undisputed; and that, commencing at the corner of Moultonborough, there was also a well traced and spotted line, which run some distance in a straight course, and was likewise so far undisputed; and it appeared that if these lines were continued in the same course they would come together and form a straight line. There was, however, a space between the two, in which the line could not be traced by any monuments in a straight course, and in this space were the gore and lot No. 11.

There was evidence tending to show that, beginning at the terminus of that part of the undisputed line which commenced at the corner of Wolfborough, there was a diverging line, running towards the Moultonborough part of the undisputed line, which continued beyond the *locus in quo;* and there was evidence tending to show that this diverging line was the one that was run and established by the original proprietors between the two towns. This line, however, if continued in the direction in which it commenced, would have shot by the other part of the undisputed straight line which commenced at Moultonborough,

but it appeared that the monuments ceased about twenty-five rods before coming up even with the terminus of the undisputed line. And the counsel for the plaintiff requested the court to instruct the jury that if they believed that the diverging line, if continued on in the course in which it was running, would not strike the undisputed line, then they could not find it to be the true line.

But the court declined so to instruct the jury.

In the course of the trial the defendant introduced a plan, to which was annexed the following certificate:

" This plan, attached hereto, numbered 4, dated 1781, and signed by James Hersey, being a plan of his survey of one hundred acre lots in Ossipee, belongs to the Masonian Proprietors, and was found by me among the papers and records of said proprietors, and the drawing into lots corresponds with the records of said proprietors. Portsmouth, 19th Octo., 1853.

J. W. PIERCE,<br>Clerk of the Masonian Proprietors."

It appeared in evidence that said Pierce was, at the time of the making of said certificate, and at the time of trial, acting clerk of said proprietors, and that he delivered the plan at his office in Portsmouth, to a witness, as an original plan, and as a part of the proprietary records, and the witness produced the same in court. This plan was permitted to go to the jury, subject to the plaintiff's exception.

The following piece of evidence was also introduced by the defendant, subject to the plaintiff's exception:

" At a meeting of Masonian Proprietors, held in Portsmouth, August 17th, 1795, it was voted

That the line run by James Hersey, from the northwesterly corner of Wolfborough to Moultonborough, as the northerly side line of Tuftonborough, be and hereby is established as the boundary line between the said township

of Tuftonborough; and that land in Ossipee gore, surveyed by said Hersey, and laid out into one hundred-acre lots, as by said Hersey's plan may be seen, dated one thousand seven hundred and eighty-one, hereby releasing and quit-claiming forever all right, title and interest to any lands on the southerly side of said line in Tuftonborough, to the proprietors of said Tuftonborough, their heirs and assigns, to enure to their use, according to their several and respective rights or parts therein. Always excepting two hundred acres in the northeasterly corner of said township, reserved or conveyed to John Dudley, and heretofore released by the proprietors of said Tuftonborough, and also any lands that any of the proprietors of lands purchased of John Tufton Mason may hold in severalty in said Tuftonborough.

Attest:    GEO. JAFFREY,
Prop'rs Clk.

A true copy from the records of the Masonian Proprietors.
J. W. PIERCE, Clerk."

It appeared, as before stated, that said Pierce is the acting clerk of the Masonian Proprietors. It also appeared that said copy was examined and compared, by the witness by whom it was produced, with the records in Pierce's possession, and he testified that it was a true copy.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside and for a new trial, for supposed error in the ruling of the court.

And the questions arising upon said motion were reserved and assigned to this court for their determination.

*Dearborn,* for the plaintiff.

The plaintiff excepts to the testimony of a witness (John Smith) touching the declarations of Pierce, when he delivered the plan as the original plan, and as a part of the original records of the proprietors.

The testimony was clearly inadmissible, being only the declaration of Pierce, who might have been used as a witness, provided he could legally have testified to the fact.

But the plaintiff contends that if Pierce had been introduced as a witness, he could not legally testify that the plan was a part of the record.

2. The plaintiff excepts to the certificate of Pierce, not only because he undertakes to certify an original paper, but also that it belongs to the Masonian Proprietors, and was found by him among the papers and records of said proprietors; and not only this, but also that the drawing into lots corresponds with the records of said proprietors.

3. The plaintiff excepts to the admission of the vote of the proprietors, because the defendant introduced no evidence relative to notices being given of the meeting; which, the plaintiff apprehends, was necessary, according to the decision in *Woods* v. *Banks*, 14 N. H. Rep. 101.

*S. Emerson*, with whom were *Carter* and *Sawyer*, for the defendant.

I. The copy from the Masonian Proprietors' records was properly admitted.

Proprietors of common lands are a corporation, by usage, during their existence. *Coburn* v. *Ellingwood*, 4 N. H. Rep. 99. And copies of their votes are evidence against them or strangers. *Atkinson* v. *Bemis*, 11 N. H. Rep. 44; Proprietors' powers, &c. Comp. Stat. ch. 161, p. 361; § 1, 15, 16.

The objection is not that it is an extract. It is an entire record, and, it is presumed, until the contrary appears, that the meeting was properly warned, and it is unnecessary to introduce evidence of the call, &c. *Cobleigh* v. *Young*, 15 N. H. Rep. 393; *Woods* v. *Banks*, 11 N. H. Rep. 101.

Where proprietors' records are evidence, copies, certified by persons having custody, have been admitted as evidence. *Woods* v. *Banks*, 14 N. H. Rep. 101.

II. The original plan was rightly admitted.

Records of corporations may be read in evidence. Comp. Stat. p. 367, § 12.

A record may be proved by mere production. 1 Story on Ev. 189.

It is always *prima facie* evidence, if found in proper files or in the hands of third persons, it appearing they were once on the files of the proprietors. *Gibson & a.* v. *Poor*, 1 Foster's Rep. 440.

Evidence as to the custody of an old ledger or chartulary, in the hands of the grantee of the Abbey of Glostonbury, evidence as to lands of that abbey. *Bullen* v. *Michel*, 2 Price 399, cited in 1 Phil. Ev. 459.

Inspection of doomsday book, as to ancient surveys, admitted as evidence. 1 Ph. Ev. 321.

So records of the same court are examined as evidence. 1 Ph. Ev. 308.

If one may certify a copy as a copy of an original, surely he may certify an original as an original. *Gibson & a.* v. *Poor*, 1 Foster's Rep. 440.

III. The question to the jury was what was the original line, run by Hersey, in 1781, and they found the one set up by the defendant as that line. It was immaterial whether it met; it was a well-marked line, so far as these parties are concerned, run by Hersey and ratified by the proprietors, and when they had authority to ratify, being owners on both sides more than fifty years since.

It was the only line.

It cannot be changed by the selectmen. *Gorrill* v. *Whittier*, 3 N. H. Rep. 265.

It cannot be changed by the selectmen as a town line. *Gorrill* v. *Whittier*, 3 N. H. Rep. 265.

None can change it as a partition line but the owners.

Acquiesced in by them, as an ancient and original line since 1781.

An agreement will be inferred that it is the true line.

WOODS, J. The facts found and reported in the case leave nothing for determination but the locality of the true line between the towns of Tuftonborough and Ossipee. That question, when determined, will fully settle the rights of these parties. And that fact is found, to a very considerable extent, by the case. The true line dividing those towns runs from a corner of the town of Wolfborough to a corner of the town of Moultonborough. Its true locality is found, and not in dispute, for a considerable distance from the corner of Wolfborough, which is found to be a straight line in the direction of the corner of Moultonborough. And also a straight line, commencing at the corner of Moultonborough, and running for some distance in the direction of the corner of Wolfborough, which would, if extended in the same direction, meet the terminus of the true line as found running from the corner of Wolfborough, is found to be the true locality of the line between the towns thus far. The locality of the portion of the line of the towns of Tuftonborough and Ossipee, that lies between the termini of the two straight lines thus described, is alone in dispute. In fact, the real dispute is still more limited, and necessarily extends only to the "diverging line," mentioned in the case, which extends from the terminus of the straight, undisputed line, commencing at the corner of Wolfborough and running towards the Moultonborough part of the undisputed line. That diverging line extends beyond the land in controversy, and, therefore, the locality of the residue of the line, between Tuftonborough and Ossipee, which is not found by the case, as it does not in any way form the boundary between the lands in dispute, becomes immaterial in determining the present controversy, excepting so far as the want of evidence of that fact may bear as a matter of evidence upon the question of the true line forming the true boundary between the premises of these parties. The case finds that there was evidence of the fact of the existence of such a diverging line, and of its extension beyond the *locus in quo,* and that it was

the line that was run and established between the two
towns by the original proprietors. This portion of the line
was marked by monuments, as were the two undisputed
portions. This case, then, is to be taken as showing a line
agreed upon by the adjoining owners, namely, the original
proprietors, (*Enfield* v. *Day*, 7 N. H. Rep. 457,) as the
boundary line diverging their possessions, and marked by
monuments so far as the diverging line extended. And the
question arising upon this branch of the case is, whether
that evidence and agreement is so far controlled by the fact
that the diverging line, if extended in a straight line,
would not strike the terminus of the Moultonborough
part of the undisputed line, as to render it incompetent for
the jury to find by their verdict that the diverging line is
the true line, so far as it extends between the two towns,
and is thus agreed upon and marked. It is difficult to see
upon what principle this position is to be maintained.
Here was, at most, as we conceive, to be drawn from the
fact relied upon by the defendant, an inference against the
probability that the diverging line was the true line. Doubt-
less, if the line thus marked, instead of diverging from a
straight line, had been found to be leading off in a straight
line between the termini of the two undisputed portions of
the line, that fact would have strengthened the evidence
and increased the probability that it was the true line.
That would be the extent of the weight of that fact, in a
case like the present. But that mere fact would not be
conclusive nor controlling, as against the fact otherwise sat-
isfactorily proved. But the question is still, whether a fact
that may be regarded as tending to show that the line
claimed is not the true line can be regarded as controlling
the agreement of parties at the time, competent to agree as
to the divisional line between their adjoining lands. We
regard this as being so far from the correct rule upon
this subject, that it is entirely the reverse of it. In fact, in
this State the parol agreements of the adjoining owners of

lands, fairly entered into in reference to the divisional lines between them, accompanied by the erection of monuments and the occupation of the parties in conformity therewith, have been allowed to have the effect to conclude them as matter of evidence as to the extent of their respective rights. Such agreements furnish conclusive proof of the accuracy of the line thus established. *Sawyer* v. *Fellows*, 6 N. H. Rep. 107; *Gray* v. *Berry*, 9 N. H. Rep. 473; *Prescott* v. *Hawkins*, 12 N. H. Rep. 19; *Carleton* v. *Redington*, 1 Foster's Rep. 291. A similar doctrine prevails in other jurisdictions. *Ebert* v. *Woods*, 1 Binney 215; *Clark* v. *Whitney*, 19 Wend. 320; *Rockwell* v. *Adams*, 16 Wend. 285. It is entirely clear, then, that this state of the proof cannot be controlled by the mere fact that the diverging line, if extended, would not meet the terminus of the Moultonborough part of the undisputed line. It would not be controlled by evidence even showing satisfactorily that the diverging line was not, in fact, the true original line. In the present state of the case, that evidence would be wholly inadmissible for such a purpose.

The omission of the judge to instruct the jury in the manner requested by the defendant, was justified by the state of the evidence, and the verdict cannot be set aside for that cause.

A further question arises in the case, as to the plan that was given in evidence upon the trial. No particular ground of exception is stated in the case. Without stopping to inquire whether, for that cause, it might not well be regarded as waived, (being one which might have been obviated, if stated at the trial, *McConihe* v. *Sawyer*, 12 N. H. Rep. 396,) we shall proceed to determine the principal question, which, as we understand it, arises upon the case. The objection relied upon, as we suppose, relates to the proof of its authenticity or of its genuineness as a plan, and not to its competency as proof relative to the question of boundary between the parties.

Was its genuineness so made out in proof as to entitle it to be given in evidence ?

The fact was shown that the plan was found in the custody of J. W. Pierce, and that he was at the time the acting clerk of the Masonian Proprietors, having the custody of their records, and that it was delivered by him, at his office in Portsmouth, in this State, as an original plan and as a part of the proprietary records, and the witness of these facts produced the plan in court. It purported, upon its face, to be an ancient plan, bearing date 1781, and purporting to be signed by James Hersey, surveyor. It was accompanied by a certificate attached to the plan, signed by Pierce, which also showed that it had been, in point of fact, in his custody, and came from his possession. Now here is ample evidence that the plan was found in the proper custody. It was found where it might be expected to be found. It was found in the proper custodia of the records of the corporation. A corporation can only keep its records and papers in the custody of its agents. Here, then, the plan in question was found along with the other muniments and evidences of the title of the corporation, and in the hands of its proper agents. Upon this state of fact, it is well settled that the genuineness of the plan was sufficiently proved to entitle it to go to the jury as evidence of such facts as it was competent to prove. 1 Greenl. Ev. 166, 167, 534; *Jackson* v. *Laguere,* 5 Cow. 225, 226. This case came up for consideration in the case of *Gibson* v. *Poor,* 1 Foster's Rep. 440–445, where the reasons for the rule of evidence are stated much at large, and need not here be repeated.

We see no ground for doubt as to the propriety of the ruling, admitting the copy from the records of the Masonian Proprietors. The copy is certified by the acting clerk, who is shown to be such, and that is sufficient. *Atkinson* v. *Bemis,* 11 N. H. Rep. 44; *Woods* v. *Banks,* 14 N. H. Rep. 101. And, moreover, it was shown by a witness to have been compared by him with the original record, and to be a

true copy. And it is well settled that where the proof is by a copy, an examined copy, duly made and sworn to, is always admissible. 1 Greenl. Ev. 534. The objection here is not taken that the copy offered was an extract, and not the entire record. And there is nothing to show that it is not a full record of the entire matter which it embraces or to which it relates. " Copies of so much of the record as relates to the subject-matter of the suit are allowed." It would be idle to require more. Nothing more can be necessary to enable the court and jury to determine and to give a right construction to what is done. *Woods* v. *Banks*, 14 N. H. Rep. 101. The copy of the record introduced, purported to contain a record of the vote of the proprietors, holden at Portsmouth, August 17, 1775, relative to the line between the towns of Tuftonborough and Ossipee, run by James Hersey, from the corner of Wolfborough to Moultonborough corner, as the northerly line of Tuftonborough. This was the only matter material embraced in the controversy. And it is not made in any way to appear that any thing further was transacted on that occasion, or that this was not the whole record, made up of the doings of the proprietors at that time. And that is sufficient. *Banks* v. *Woods*, before cited. Moreover, we think this last ground of exception cannot prevail, for another reason. It was plainly of such a character that it could have been readily obviated if it had existed, and had been specifically pointed out at the trial. If it had been objected, in terms, that the copy produced was only a copy of a part of the proceedings had, and recorded at the date of said meeting, it is apparent that the deficiency could easily have been supplied. By the practice of the court, the objection, if it appeared, and it were insisted upon, that the copy produced in evidence was only a part of the record, it must be considered as waived. *Mc Conihe* v. *Sawyer*, before cited.

*Judgment on the verdict.*