## GRAY *vs.* BERRY.

The owners of adjoining lots of land may enter into agreement by parole, to establish the boundaries of their lots; and such agreement, when executed, will be conclusive against them, and all persons claiming under them, as to the lines of said lots.

Any agreement, however, thus established, may be afterwards rescinded, altered or modified, by subsequent agreement of the parties.

TROVER for six cords of wood. Plea, the general issue.

It appeared in evidence that the defendant and one Charles Fulker owned land adjoining each other, and that the plaintiff, by permission of said Fulker, cut the wood in controversy, near the lines of said lots, and, as the plaintiff contended, upon said Fulker's land.

The plaintiff proved that in 1822 the then owners of said tracts of land, by agreement established the line known by the name of the Otis line, as the true boundary of their respective tracts of land, and by this line so established the land on which the wood was cut was the property of said Fulker.

But it was proved, on the part of the defendant, that subsequently, in 1832, the then owners of the said tracts made a new agreement as to the dividing line, and established the line known as the McDaniel line, as the true line between the lots, by which line the land on which said wood was cut was the property of the defendant.

On the part of the plaintiff it was contended, that the owners of the land having, in 1822, established the line between them, it was not competent for them to change the line in 1832 by a parole agreement, and by erecting new monuments.

But the court overruled the objection, and instructed the jury that if a new line was established in 1832, as contended for by the defendant, in such manner as to bring the land where the wood was cut within his tract, the defendant was entitled to a verdict.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial, on account of misdirection in matters aforesaid.

*Tebbetts*, and *Christie*, for the plaintiff, contended that the lines of adjoining tracts of land could not be established by parole agreement so as to bind the party, but that other evidence is still admissible to show the true line; and to this point cited 9 *Johns.* 61, *Stuyvesant* vs. *Dunham ;* 15 *Mass.* 152, *Whitney* vs. *Holmes ;* 4 *Green.* 327, *Gove* vs. *Richardson ;* 1 *Binney* 216, *Ebert* vs. *Wood.*

They also contended, that if a line might be established by agreement, it could not afterwards be altered by the parties: That the operation of such agreement was to render certain what was before uncertain; and that when the line was once rendered certain there was an end of the right of the parties to act by parole.

*Hale & Woodman*, for the defendant. It is not necessary for the defendant to contend that the establishment of boundary lines between two adjacent owners, agreeably to a parole contract, passes real estate from one to the other; but that while such contract is subsisting as to the line, it is conclusive evidence between them and all claiming under them, of the extent and limits of real estate which they have acquired by a higher title.

It may sometimes happen by such agreement, that the parties may mistake their rights; but there is the same liability to mistake, or error as to any other evidence of extent of title. It is as correct as other means of settling controversies as to boundaries, and far more cheap and expeditious than a trial at law.

The contract of boundary in 1822 did not pass, and was not intended to pass, any land from one party to the other. Its whole effect was, that while it subsisted each was concluded from overstepping that boundary; but it is subject

to the law of every other contract, that it may be dissolved *eo ligamine quo ligatur.* This was effected in 1832, when a new contract of boundary was made ; and by this the plaintiff is concluded from claiming beyond the line then established, so long as this contract is in force.

To sustain the grounds taken by the defendant the following authorities were cited. 6 *N. H. R.* 107, *Sawyer* vs. *Fellows ;* 1 *Green.* 219, *Prop's Kennebec Purchase* vs. *Tiffany ;* 2 *Green.* 213, *Pike* vs. *Dyke ;* 5 *ditto* 24, *Ripley* vs. *Berry & al. ;* 7 *ditto* 61, *Esmond* vs. *Tarbox.*

UPHAM, J. In this case, one Charles Fulker and the defendant owned lands adjoining each other, and the plaintiff, by permission of Fulker, cut wood near the line of these lots, which wood the defendant carried away, claiming that it was cut upon his land.

It appeared that in 1822 the then owners of the land agreed upon a line which is known by the name of the Otis line, as the true boundary of their respective titles. By the line, as then established, the land where the wood now in controversy was cut would be the property of Fulker.

Subsequently, in 1832, the then owners of the land caused a new survey to be made, and entered into a new agreement, establishing what is termed the McDaniel line as the true dividing line between them. By this line the land where the wood was cut would be the property of the defendant.

The case, therefore, raises the question whether a parole agreement can be made by adjoining owners, defining the boundaries of their lands? and, if such agreement has been once made, whether it can subsequently be revised, altered or modified by a new agreement of the owners?

There is some diversity of opinion in the decisions upon this subject.

In *Jackson* vs. *Dysling,* 2 *Cai. R.* 198, it is held, that a parole agreement to abide by a certain division line, will so far affect the rights of the parties as to prevent either from

claiming in ejectment contrary to it, though it will not pass the lands. It is held, also, that the parties may waive the line thus agreed upon, or modify it by a subsequent parole agreement.

It has been settled, in repeated cases in New-York, that long acquiescence by an owner of land, in an erroneous location, will authorize a jury to find that the party *had agreed* to a location different from that given by his deed ; and that whether the party knew his right or not, such location or acquiescence will conclude him. 13 *Wend.* 536, *Dibble* vs. *Rogers & al. ;* 17 *Johns.* 29, *Jackson* vs. *Freer ;* 7 *Cow.* 723, *Jackson* vs. *Widger ;* 7 *Cow.*701, *Rockwell* vs. *Adams ; and same case, in* 6 *Wend.* 467 ; 10 *Wend.* 104, *McCormick* vs. *Barnum.*

In the cases cited, acquiescence for only four or five years was held not to be sufficient evidence of an implied agreement to conclude a party, while seventeen or eighteen years' possession was regarded as conclusive on this point.

If an *implied* agreement will bind a party to any given line, an *express* agreement must necessarily have that effect ; and it was so holden in *Kip* vs. *Norton*, 12 *Wend.*127. Chief Justice Savage remarks in that case, " that the only question ' is, whether the party has so assented to the location as to be ' bound by it, and that such assent may be *either express* or ' implied. If there is a disputed line between two adjoining ' proprietors of land, it may be settled between them by a lo- ' cation made by both, or made by one and acquiesced in by the ' other, for so long a time as to be evidence of an agreement ' to the line. There can be no doubt that an express parole ' agreement to settle a disputed or unsettled line, is valid if ' executed immediately, and possession accompanies and fol- ' lows such agreement. Not that the title to the land passes ' by the parole agreement, but the party making the agree- ' ment is not permitted to bring an action in violation of it. ' The agreement does not pass the title, but fixes the location ' where the estate of each is supposed to exist. So, also,

' where there has been no express agreement, long acquies-
' cence by one in the line assumed by the other, is evidence
' of an agreement."

In *Sawyer* vs. *Fellows*, 6 *N. H. R.* 107, it is settled that a parole agreement between owners of adjoining land, that a surveyor shall run the line between them, and that the line shall be thus ascertained and settled, is, when executed, conclusive against them and all persons claiming under them. In 1 *Binney* 215, *Ebert* vs. *Wood*, it is holden that a line so established, if followed by actual possession, is good.

On the other hand, it is held in Massachusetts and Maine, that a line established by agreement of parties is not conclusive so as to preclude the owner from showing that his land extends beyond such line. 15 *Mass.* 153, *Whitney* vs. *Holmes* ; 4 *Green.* 327, *Gove* vs. *Richardson.* In the latter case it is said, however, that such location will be received as strong evidence of the accuracy of the line thus established.

But it is settled, in each of those states, that if a deed of land refer to a monument as then existing, which has not been erected, and the parties afterwards by agreement erect such monument with the express view of conforming to the deed, such monument will govern as to the extent of the land, though not entirely coinciding with the deed. 12 *Mass.* 469, *Makepeace* vs. *Bancroft* ; 1 *Green.* 219, *Prop. Kennebec Purchase* vs. *Tiffany.*

Such are the principal authorities upon this subject ; and we think the better opinion is, that an agreement made by adjoining owners, to settle a disputed line, is valid if duly executed at the time by the parties. This agreement, as has been remarked, passes no interest in lands—it merely defines the extent of the respective titles as conveyed by deed. While the agreement subsists, however, it is conclusive evidence as to such boundaries.

Still, it is a mere agreement by parole, and the parties may afterwards rescind, alter, or modify it, at their election.

It is said that the operation of such an agreement is to

render certain what was before uncertain, and that when rendered certain, that is an end of the right of parties to act by parole. This is true while such agreement continues; but the same power that made it, can rescind it, and enter into a new agreement. Each agreement is a mere parole contract in relation to a deed, and the last agreement must govern.

By the last contract made in this case, the line as established leaves the land where the wood was cut as the property of the defendant; and there must, therefore, be

*Judgment for the defendant.*