## PRESCOTT *vs.* HAWKINS & a.

L. agreed to sell P. one hundred acres of land, from a tract bounding on a road, the course of which was North twenty degrees West. Having fixed a corner upon the road, and measured the first line running from the road, he said he could make the deed without going farther, and directed the surveyor, who was employed by P., when he run out the land, to run from the end of that line, parallel with the road, far enough to embrace one hundred acres. L. subsequently executed a deed, but instead of describing the course from the end of that line, as a course North twenty degrees West, it was written in the deed, "North twenty degrees East." After the deed was delivered, the surveyor, at the request of P., run out the tract according to the directions originally given, and marked the lines and corners, ending with a maple tree on the road; and there was evidence that L. had pointed out this tree as the corner of the land of P., but it did not appear that he then knew that the survey was different from the description in the deed.—After this, L. sold the land northerly of, and adjoining the hundred acres, to H., bounding him on the land of P., and there

Prescott v. Hawkins.

was evidence that H. had knowledge of the line as marked, and that he subsequently admitted that there was a mistake in the deed to P.—In an action by the heir of P., against purchasers under H., who, it was alleged, had knowledge of the mistake, but who had entered claiming a portion of the land included in the survey—*Held*, 1. That the evidence of a mistake in the deed could not be received for the purpose of giving the deed a different operation from that which it would have by the terms of the instrument itself. 2. That the evidence respecting the survey, and the lines and corners, could not be submitted to a jury, on which to find a practical location varying from the lines of the deed, or an agreement of the parties establishing a line according to the survey. 3. That further proceedings in the action might be stayed, to give the plaintiff an opportunity to file a bill in equity, for the purpose of having the mistake in the deed corrected; and that if, on such bill, the deed should be reformed, so as to conform to the survey, it might then be made available in the prosecution of the suit.

Trespass, for breaking and entering the plaintiff's close in Holderness.

Upon the trial, it appeared that both parties claimed title to the *locus in quo*, under Arthur Livermore, who, on the 28th of October, 1821, conveyed to Nathaniel C. Prescott one hundred acres of land, in Holderness, " beginning where the new road crosses the line between the school lot and the lot where Samuel Currier lived; then east by said lot," &c., " *thence north, twenty degrees east, one hundred rods, to a stake and stones ;* thence west, twenty degrees south, about half a mile, to said new road; thence southerly, by said road, to the first mentioned bound."

It appeared from the testimony of Joshua Smith, a surveyor, that prior to the execution of this deed, he was called by Prescott to run out one hundred acres of common land, which he was about to purchase of said Livermore, in pursuance of which he went and met Livermore and Prescott at the place—that Livermore said he should lay out the land one hundred rods on the road, and directed him to take the general course of the road, which he did, and found it *north, twenty degrees west*—that they then run from the road, on the head line of the public lot No. 1, to the north-east corner of said lot; said Livermore then said he could make the deed without going any further, and directed him, when he

finished the survey, to run northerly one hundred rods, parallel with the road—that he did not proceed any further at that time—that afterwards, within a year, he was called on by Prescott to finish the survey—that they begun on the road and run east, twenty degrees north, on the head line of the public lots No. 1 and 2, one hundred and sixty rods, and there erected a corner—that he then called for the deed, and, on reading the courses, told Prescott there was a mistake in the deed—that Prescott directed him to run north, twenty degrees west, and the witness said he would run according to his directions—that he proceeded, and *run north, twenty degrees west*, one hundred rods, to a small rock-maple tree, and marked it, as he usually did corners, and Prescott cut out the initials of his name on the tree—that he then turned a right angle, and run parallel with the first course, to the road, and there marked the corner as usual, which he believed was a rock-maple—that Livermore directed him to run one hundred and sixty rods from the road, on the head line of the public lots—that stones were placed, and trees spotted, along the line, as usual, and that Prescott told him to run the line as Livermore directed.

There was other evidence to show that the survey was made, and the line marked, as stated in Smith's deposition, and that the corner on the road, where the survey terminated, was a maple tree.

Livermore was not present when this survey was made.

The plaintiff introduced the evidence of said Livermore, that his intention was to convey, and he believed Prescott's intention was to purchase, a tract which he described, (giving the courses and distances as in the deed, with the exception that the course on the easterly side was *north, twenty degrees west*, instead of *north, twenty degrees east*,) and that there was a rock-maple tree, near the road, which Prescott, or some other person, in the course of the same year, showed him, and which he had repeatedly seen since, and had always considered it to be Prescott's corner. Prescott entered into

the tract immediately after his purchase, and continued in possession until his decease, and the plaintiff is his heir.

On the 13th of January, 1826, Livermore conveyed the land lying northerly of the tract sold to Prescott, to Samuel Hackett, and in the deed to him bounded him on the land of Prescott.

There was evidence that Hackett was one of the appraisers on the estate of Prescott—that he, on that occasion, saw the deed, Livermore to Prescott, and said there was a mistake in it, and that the land of Prescott extended on the north to the maple tree ; and that he, at other times, pointed out that tree as the corner between his land and Prescott's.

The defendants have title to the land conveyed to Hackett, by a conveyance made since Hackett's declaration aforesaid ; and there was evidence tending to show that they had notice of the alleged mistake in the deed to Prescott, and that the maple tree was the corner, before they purchased.

No fence had been built between Hackett and Prescott, nor had the land been cleared on either side of the line, between the lots, when the defendants entered on the strip in dispute between the parties, lying south of the line marked in the survey by Smith, as the northerly line of Prescott's land.

The court instructed the jury, that no evidence tending to show a mistake in the deed, Livermore to Prescott, could be received with any view to a correction of such mistake— that they must take the deed to have been drawn according to the intention of the parties—but that an actual location of the land sold and purchased might be made by the parties, by the running of lines and the erection of monuments, varying from the courses specified in the deed ; and, if such location was actually made, it would control the courses mentioned in the deed, and the title pass to Prescott—that there was no evidence to show such actual location before the deed was executed, and they must consider whether there were such proceedings afterwards as to bind the parties

to them to a line not according to the lines set down in the deed—that in order to this, there must be such proceedings as would constitute an agreement, and bind both parties—that this might be done either by the parties going on together, and establishing the lines, and erecting monuments, or by one of them making a survey, and marking the lines with monuments, and by the other party assenting to it afterwards, in such manner as to constitute an agreement that the line so marked should be the line between them—that they might consider, on the evidence before them, whether Joshua Smith went on, and made the survey, and established the monuments, by the authority of Livermore, to act for him, and authorized by him to make a survey in his behalf, and fix a line that should bind him—that if they were not satisfied of this, they might enquire, in the next place, whether, Prescott having made an actual location in the manner described, Livermore assented to that survey afterwards, and prior to his deed to Samuel Hackett—that if he did not authorize it before it was made, there must be, in order to sustain the plaintiff's case, a distinct recognition of it afterwards, while he was an adjoining owner, and that the assent must be such as to constitute an agreement—that if there was neither such prior authority, nor such subsequent assent, they must find a verdict for the defendant; but if they found either of these, and that Hackett and the defendants had notice that there was a mistake in the deed, and an actual location different from the deed, before they respectively purchased, they might find for the plaintiff.

The jury found a verdict for the plaintiff, and the defendants excepted to the foregoing instructions, and moved for a new trial:

1. Because the power, stated by Joshua Smith, in his deposition, to finish the survey of the lot according to Livermore's instructions, before the deed was made, could not be considered as a valid and operative power, after Livermore had made, and Prescott had accepted, a deed with different boundaries from those in the instructions.

2. Because the deed, made and accepted by the parties, became a valid grant, according to the boundaries contained in it. No new boundaries could, therefore, be established by the adjoining owners, Livermore and Prescott, unless by some agreement by themselves, or agents duly authorized, made after the execution and acceptance of the deed.

3. Because the parties, under the facts in the case, could not agree to adjust and hold by boundaries other than those established by the deed, the land being entirely uncultivated, and the variance between the boundaries in the deed, and those attempted to be established, being too great to be made by the united agreement of the parties, without deed.

*Bell, & W. C. Thompson*, for the defendants. The case turns on the question whether the deed, Livermore to Prescott, shall be treated according to the terms of the deed. If so, the case is with the defendants. If the deed is to be regarded as if it was according to the survey of Smith, then the case is with the plaintiff.

The direction of the court in relation to this part of the case, that the jury might consider whether Livermore authorized Smith to make a location, cannot be sustained. Prescott directed Smith to run the lines, and he said he would run according to Prescott's directions. There was no evidence for the jury to consider whether Livermore authorized Smith to run any particular course. The deed contained the most authentic instructions. It superseded all antecedent directions. There was no evidence to be left to the jury on this point, and the court should have told the jury that there was no evidence on which they could find a practical location, by agreement of the parties.

The deed, while it stands unreformed and uncorrected, is the only legal evidence of the rights of the parties, and is not to be controlled but by something taking place subsequent to its execution. Here was nothing which can operate to control it. Livermore saw a maple tree there, but he

does not say that the tree he saw was the one marked by Smith, or that he had any knowledge respecting the actual survey.

This is not a case in which an agreement about a line could bind the parties. A line cannot be changed so extensively, except by deed. The principle that a practical location, by agreement, shall bind, cannot be applied in a case in which the location would contradict the deed. Where the deeds do not make the monuments certain, they may be ascertained by agreement. But they cannot be so changed as to contradict the conveyance itself. 6 *N. H. Rep.* 107, *Sawyer* vs. *Fellows.*

*Bartlett, & N. P. Rogers,* for the plaintiff. If the deed is treated as directions to a surveyor, the mistake may be shown in the directions. It is only as a deed that it cannot be contradicted. The objection that Prescott gave the directions, is " sticking in the bark." He directed Smith to run as Livermore had directed him.

If Livermore, after the deed, assented to the location, it is valid from that time, and the jury have so found. The assent of the principal to the act of an agent will bind the principal. 13 *Mass.* 363, *Pratt* vs. *Putnam.*

The defendants objection goes the whole extent of holding that the parties cannot agree to a line, except according to the deed. But this cannot be maintained. 6 *Wend.* 469, *Rockwell* vs. *Adams ; 7 Cowen's R.* 761 ; 3 *Greenl. R.* 126 ; 5 *Greenl. R.* 24 ; 7 *Greenl. R.* 61 ; 13 *Maine R.* 329 ; 7 *Johns. R.* 245 ; 12 *Mass. R.* 473 ; 1 *Greenl. R.* 219.

PARKER, C. J. The evidence in this case went, very conclusively, to show a mistake in the deed from Judge Livermore to Prescott, the plaintiff's ancestor, if it might have been received for that purpose.

But it is well settled that a court of law cannot correct a mistake in a deed, or receive evidence to show such mistake,

with a view to give the deed a different operation from that which it would have by the terms of it. 5 *N. H. Rep.* 280, *Enfield* vs. *Permit;* 18 *Wend. R.* 157, *Van Wyck* vs. *Wright;* 1 *Fairf. R.* 418, *Lincoln* vs. *Avery.*

The court, therefore, was bound to consider the deed as having been correctly drawn, and the jury were so instructed.

Connected, however, with this evidence, tending to show a mistake, was other evidence of a partial survey before the deed was made—of directions respecting the completion of that survey—of the survey actually made, an erection of monuments, and some recognition of one of those monuments by Judge Livermore as the corner boundary of Prescott's land; and the question arising on this evidence is, whether it was rightly left to the jury, with instructions that if an actual location was made by the parties, by the running of lines and the erection of monuments varying from the courses specified in the deed, this location would control those courses, and the land embraced in it pass to Prescott—that the evidence must be such as to show an agreement—and that they might consider, on the evidence before them, whether Joshua Smith made the survey, and established the monuments, by authority from Judge Livermore to act for him—make a survey in his behalf—and fix a line that would bind him; or whether Livermore afterwards, and before his deed to Hackett of the adjoining land, recognized and assented to it under such circumstances as to constitute an agreement; and that if they found either, and that Hackett and the defendants had notice, they might find a verdict for the plaintiff.

There are cases in which a practical location of land, by agreement of the parties, varying from the description in the deed, will govern the courses and distances set down in the deed itself. 3 *Greenl. R.* 126, *Brown* vs. *Gay;* 7 *Greenl. R.* 61, *Esmond* vs. *Tarbox;* 13 *Maine R.* 329, *Thomas* vs. *Patten;* 7 *Johns. R.* 237, *Jackson* vs. *Ogden;* 7 *Cowen's R.* 761, *Rockwell* vs. *Adams;* 16 *Wend. R.* 285, *Adams* vs. *Rockwell;* 19 *Wend. R.* 320, *Clark* vs. *Withey.*

Prescott *v.* Hawkins.

And the actual establishment of monuments, by agreement of the parties, subsequent to the execution of the deed, will bind them, and those who claim under them, notwithstanding the monuments may vary from the courses and distances in the deed.   2 *N. H. Rep.* 197, *Lerned* vs. *Morrill;* 1 *Greenl. R.* 219, *Proprietors of Kennebeck Purchase* vs. *Tiffany;* 12 *Mass. R.* 469, *Makepeace* vs. *Bancroft.*

So, an agreement ascertaining and fixing the dividing line between adjoining owners, is binding, although the agreement is by parol.   6 *N. H. Rep.* 107, *Sawyer* vs. *Fellows;* 9 *N. H. Rep.* 473, *Gray* vs. *Berry.*

But none of the cases cited come up to this case.   They sustain the principles of law suggested on the trial, but not the application of those principles to the facts stated.

Here was not, in truth, a practical location by agreement of the parties, either before the deed was made, or subsequent to its execution.

The testimony shows that Judge Livermore gave directions to Smith, the surveyor, to run northerly, one hundred rods, parallel with the road, when he finished the survey; but he does not appear to have constituted Smith his agent, or to have authorized him to make any agreement which should bind him, or to make any survey, as to course or distance, different from the description he was then intending to insert in the deed which was to be made.   Nor did he authorize him to erect any monuments in his behalf.   When Smith finished the survey, he was to act, and did act, as the agent of Prescott.   This is apparent from the fact that Prescott employed him when the survey was commenced, and when it was finished.   The acts of Smith, then, cannot be regarded as a practical location, controlling the courses of the deed which was made by Livermore subsequent to the time when he gave the instructions respecting the survey.

Nor does it appear that Livermore, when he subsequently pointed out, or recognized, the tree, upon the road, as the

corner of Prescott's land, had any knowledge that the survey had been made on the easterly side of the lot by running north, twenty degrees west, instead of "north, twenty degrees east," as set down in the deed. As the tract sold was to be one hundred acres, this difference in the course on the easterly side made a material difference in the location of the northerly line, and in the termination of that line on the road where the tree was situated; but there is no evidence to show that Livermore had then any knowledge that this difference had been made. What he thus said, therefore, cannot be regarded as an agreement establishing the tree as a corner, or as binding him to a location varying from the precise description in the deed. Aside from the evidence of a mistake, existing in the deed itself, there would be no pretence that any thing had been done, subsequent to its execution, which could bind the grantor.

The verdict must, therefore, be set aside, and a new trial granted. But farther proceedings in the case may be stayed, until the plaintiff can have an opportunity to file a bill in equity, and have the mistake (which on the case before us seems to be so apparent,) corrected, and the deed reformed. And if, upon such bill, the mistake should be proved, and it should appear that Hackett, and the defendants, when they severally purchased, had notice of it; the correction may be made, in effect, to relate back, by injunction, or otherwise, so as to avail the plaintiff in this action. 2 *Johns. Ch. R.* 585, *Gillespie* vs. *Moon ;* 4 *Paige's C. R.* 355, *Gates* vs. *Green ;* 6 *Paige* 347, *Gouverneur* vs. *Titus ;* 1 *Ves., sen.,* 318, *Henkle* vs. *The Royal Exchange Assurance Company.*

*Verdict set aside.*