## WALLACE *v.* GOODALL.

The deed of a mortgagee in possession, without an assignment of the debt, conveys his possession; and that enables the grantee, and those who claim under him, to maintain an action against all who do not show a better title.

A formal possession taken by the mortgagee is sufficient for that purpose; and if he leave the land immediately the possession is not lost, nor does the fact furnish evidence of an intention to abandon it.

If one claim land by an assignment of a mortgage, he must prove the execution of the mortgage. The production of an office copy is not sufficient.

If the owners of two lots, separated by a range line, agree on a boundary, whether as a matter of convention, or upon inquiry as to its real situation, this agreement is not evidence in an action between owners of other lots, separated by the same range line, to prove its position.

The opinion given by a surveyor, formed upon an inspection of marks upon trees, as to the boundaries of lots, cannot be given in evidence, although he has since deceased.

If the plaintiff's grantor is silent when a certain monument is pointed out to him as the boundary of his land, that is slight evidence that he admits it to be such, unless it appear that he was ignorant, and was seeking information on the subject.

A memorandum, made by one at the dictation of another, authenticated by the testimony of both, is evidence. But a copy is not, unless the original be lost or destroyed.

If the plaintiff have sold the standing trees upon the soil, this may be shown in mitigation of damages in an action of trespass for breaking the close; and his admission that he has so sold them is evidence of the fact.

The admission of the purchaser of the trees is not evidence against the vendor as to the boundaries of the land.

In an action for breaking the close and removing the timber, the jury in assessing damages are not restricted to the value of the timber, but may consider the deterioration of the land caused by its removal.

TRESPASS *quare clausum* and cutting timber trees. Plea, the general issue.

The plaintiff offered, (1), an office-copy of a deed from Joshua B. Dodge to Jonathan P. Randlett, dated January

25, 1825,, conveying lot No. 61, in Bethlehem, designated by number only.

2. A mortgage from Randlett to Dodge, of same date, conditioned to pay four notes, amounting to $138.15 and interest.

3. A deed from said Dodge to James Handy, dated September 7, 1835, conveying the same premises.

4. A mortgage of the same from Handy to Renton Philips, dated the same day, conditioned to secure and save harmless the said Philips from a note of the same date, made by Handy and Philips to Dodge, or bearer, for $200, payable one half in one and the other half in two years.

5. An assignment of said mortgage to the plaintiff, October 8, 1842, the note having been paid by Philips.

Philips testified that after this assignment he accompanied Wallace upon the land, where he went to take possession of it under the mortgage.

He also testified that Jonathan Randlett lived on the lot several years, and until about a year before Handy bought it: That after Handy bought, the witness went upon the lot with Simeon Dodge, acting as agent of Joshua B. Dodge, as a witness to his taking possession. Simeon Dodge said he took possession of the lot for Joshua B. Dodge. No one was then in possession. Dodge carried an old chair into the house, said that he took possession of the lot, and then left the lot.

The defendant objected to the admission of this last mortgage, because its execution was not proved, and farther contended that it showed no title in this plaintiff, but the court overruled the objections.

The defendants offered a deed from Stephen P. Webster to Ira Goodall, dated February 27, 1837, conveying lot No. 56, in said Bethlehem. These lots, it was agreed, headed upon each other, and the question was, where is the line between them ? The plaintiff claimed to a small

Wallace *v.* Goodall.

birch tree inclosing the trees in question on No. 61. The defendants claimed to a larger birch, about thirty-six rods farther south, and inclosing the trees on No. 56, as marked on the following plan:

*a b c d.* Line claimed by the plaintiff.

*b.* Small birch.

*c.* Hemlock, S. E. corner of 57.

*e f g.* Line claimed by the defendants.

*f.* Large birch.

*h.* Spruce.

*i.* Hemlock, N. E. corner of 56.

Philip C. Wilkins was called by the plaintiff, and testified, among other things, that he was called upon in the fall of 1832 by Aaron Gile, Eastman, Abbot, Bellows Little and Fitzgerald, to run the south line of lots Nos. 57, 55 and 54. Eastman, Bellows and Gile claimed an interest in No. 57 and a gore on 54. Bellows and Abbot claimed 54 and an interest in 55. " I found the hemlock as indicated on the plan at the south-east corner of lot No. 57. It was marked like other corners in that town. The persons employing me thought this hemlock was not far

enough south, and I spent three or four days in trying to find another corner, further south, but could not. From this hemlock, ran west across lots Nos. 57, 56, 55 and 54 to the line of Littleton. Struck the plaintiff's birch with this line, and found an old marked line the whole way where the old growth was standing. In December, 1835, or 1836, I went on to lot No. 56 with Stephen P. Webster, at his request, to show him where I had run the lines; for he said he talked of selling that lot, and wanted to see its bounds. He said he knew the hemlock tree on the northeast corner, was a corner. I showed him the small birch (plaintiff's) as the southeast corner, and went to the spruce and to the hemlock on the southeast corner of 57. He made no objection to the small birch being the corner. He said he was pretty well acquainted with the lines in that town. He examined my field-book, and I understood that he owned much land in that section of the country. S. P. Webster is dead."

To the admission of this evidence the defendant objected, but it was ruled in by the court.

Samuel F. Gilman (plaintiff's witness) testified that sixteen or seventeen years ago he lived on No. 60, and owned it, and then knew its corners. About fourteen years ago I had sold No. 60 to Aaron Brackett. I went on with said Brackett and Aaron Gile, who claimed half of No. 57, and I. C. Webster, an old surveyor, since deceased, to run and settle the lines between them. I showed them the line, and both the large and the small birch. We began at the southwest corner of No. 60, ran thence to the large birch, and examined it. Brackett said this would not give him his quantity of land, and they concluded it was not old enough, and we then ran to the small birch. They thought the marks on this older than those on the other, but we ran to the spruce, and they finally agreed upon the spruce as a corner.

To the admission of this testimony the defendants objected, but the court admitted it.

Aaron Gile was also permitted to testify to the same, in corroboration of Gilman, except that he said they agreed upon the small birch as the corner, instead of the spruce.

Reuben Phillips was permitted to testify (the defendants objecting), that twenty-one or twenty-two years ago he went on to No. 60 with his father and others, and one Snow, who was an old surveyor, and son of the Snow who allotted the town originally, (both now deceased). " We began at the southwest corner of No. 60, and ran down north to the large birch, and examined it. Snow said he thought it was not an original corner, because the marks on it were not old enough."

Samuel Gilman testified that he counted and measured the stumps of the trees cut by the defendants, and gave a true account of them to Reuben Phillips, who kept minutes of them on paper with a pencil. Phillips testified that he entered them correctly, as Gilman gave them to him, and thinks the paper is now at his house; that he afterwards read off the minutes correctly to Charles Hartshorn, and Hartshorn testified that he entered the account correctly, as given him by Phillips, on paper with a pencil, and it remained in the counting-room of Mr. Redington from April last, until a few days since he traced the figures with ink. The plaintiff then offered to put in this last mentioned paper without producing the one made before by Phillips. To this the defendants objected, but the court admitted it to be read to the jury.

The defendants then offered to prove the plaintiff's declarations, that he had sold the trees in question to Ely and Redington, before the defendants took them, and then to prove the admissions of Ely and Redington as to the lines in question, and also to show that the plaintiff was not entitled to recover, having previously sold his interest in the trees. To this the plaintiff objected, and the objection was sustained by the court.

The court instructed the jury that if they found the

timber was cut off by the defendants, supposing that their lines enclosed it, still they were not bound to limit the damages to the mere value of the trees, or what they would bring at that time, but might give the plaintiff what would have been their value to him if they had not then been cut off.

To the above instructions the defendants excepted. The jury returned a verdict for the plaintiff, and the defendants moved to set it aside, and for a new trial.

*Morrison*, for the defendants. The mortgage of Handy to Phillips was not proved. The copy of a deed in the chain of title is good, except where the grantee relies on a deed to himself, or where the deed is presumed to be in his custody or power. 7 Pick. 10; 13 Pick. 527. The copy is admitted, because the original is not in the power of the party seeking to prove it.

An assignee must be taken to have the mortgage deed in his possession. In the ordinary course of business he should have it. 10 N. H. Rep. 544. The mortgage is the last deed in the chain of title. The interest of the mortgagee is only a chattel interest, and passes by parol.

But if that be admitted to be proved, it does not appear that the plaintiff has a title. There is no evidence that Dodge had a title when he conveyed to Randlett, and his possession cannot avail Dodge. J. B. Dodge had only the interest of a mortgagee, and that does not pass by the deed that he gave to Handy. The deed does not assume to pass the debt secured by the mortgage. *Ellison* v. *Daniels*, 11 N. H. Rep. 274.

Dodge did not enter under his mortgage. Matth. on Pres. Ev. 356; 9 N. H. Rep. 398; 12 N. H. Rep. 338. There was a mere entry by Simeon Dodge, as his agent, who went on and then immediately left. This was no presumption of title in any body. If it were a possession, it was abandoned. 9 N. H. Rep. 253; 10 Johns. 339;

Wallace *v.* Goodall.

15 Wend. 171. The same remarks apply to the plaintiff's entry in 1842. If he gained possession, he abandoned it.

As to the evidence that sundry persons who were present at surveys admitted them to be correct, the declarations of Stephen P. Webster do not amount to an admission. Webster was seeking information, and his omission to say any thing in reply to the statement which the witness made, is not an admission. 1 Greenl. Ev. 231, 232. This was not the case of a statement made by one having an interest adverse to his statement, and it does not appear that Webster's grantee had the information that was communicated to Webster.

The declarations of Snow, as given by Gile and Phillips, were incompetent. Is the opinion of a deceased surveyor, as to the age of a mark, evidence? It was founded only on the age of the mark. 14 East 323; 1 Greenl. Ev. 270.

Traditionary evidence of boundaries is not received in England. 10 Pet. 412; *Smith* v. *Powers,* 15 N. H. Rep. 546; 2 Cow. Phil., note 447. A surveyor has not been decided to be competent to give an opinion as to the age of a mark. Whenever he has testified that such was a corner, he has assumed to testify from knowledge. 12 Pick. 532; 5 Met. 226. Will the court admit another exception to the rule which excludes hearsay? There is a distinction between stating as a fact that a certain tree is a corner, and an opinion founded on the age of the marks. These show for themselves, and are better evidence than the opinion of deceased witnesses. The opinions of others cannot be proved by the testimony of witnesses in any case. Cow. Phil. 760.

Part of the evidence of Gilman is subject to the same exception. He gives the opinions of others who had no means of knowledge. " They concluded the marks on the old birch were not old enough. The agreement, in the opinion of those who were present, as to what was the corner they were in search of, cannot affect the rights of

---

---

the owners of No. 56, who were not present. Those who were present were not owners. It appears only that they claimed to be owners, but no possession was shown.

The copy of the copy of minutes of measurements of trees was not admissible. A witness cannot refresh his memory, even by a copy. 2 C. & P. 196. The original, it appeared, was in existence. 11 N. H. Rep. 212; 16 Wend. 586; 1 Greenl. Ev. 495.

The admissions of the plaintiff, that he had sold the timber standing upon the land, should have been received. It did not appear whether the sale was by parol or in writing. 8 Met. 34; 1 Met. 313; 7 Greenl. 447. The admissions would have shown that Ely & Redington had an equitable title. 5 N. H. Rep. 130.

The rule of damages stated by the court was wrong. 7 N. H. Rep. 352; 2 N. H. Rep. 152.

*Bellows*, for the plaintiff. There is no evidence of the foreclosure of the mortgage by J. B. Dodge; but he obtained possession, and that was something for him to convey. 11 N. H. Rep. 274; 14 Pick. 379.

The admissions of the defendant's grantor, as to his boundaries, are evidence, whether he knew or not where they were. If slight evidence, the jury still might consider it. *Shepherd* v. *Thompson*, 4 N. H. Rep. 213.

The testimony of Gilman relates to the bounds between 57 and 60. The controversy relates to the line between 56 and 61. Are acts and admissions, tending to fix the range line, evidence?

The evidence shows the existence of a range line extending through the town. It is the boundary of lots, and may be shown in various ways. If the trees were gone on any of the lots, the range line might be shown by marked trees on any of the lots. If there are no trees on the lots in question, the line may be found by marked trees on other lots in the same ranges.

Wallace v. Goodall.

The existence and location of the line may be shown by tradition. It is a matter of public concern, affecting many persons and interests, and is, in that particular, like the boundaries of manors in England, and may be shown by the declarations of deceased persons, having no interest to misrepresent. It may be shown by the recognition of persons living on it, or whose estates abut upon it, and this partakes of the character of traditionary evidence. Their acts are better than any declarations. *Bailey*, J., in 1 M. & S. 690.

A single line here is the boundary of many lots, and so traditionary evidence is admissible. 1 Greenl. Ev. 107, note 1; 1 Pet. S. C. 496; 6 Pet. S. C. 328. If so, it is upon the ground that, by their acts, these persons have admitted the line to be the true one. 1 Met. 95, carries the doctrine further than we ask for it in this case.

Grants, by strangers, of adjoining lands, are evidence as to the location of a common line or boundary. 6 Wend. 467; 5 N. H. Rep. 33. Perambulation of town lines is evidence of the lines of lots, when they are bounded upon the line of the town. The determination of the line between 60 and 57 fixes the line of the lots here. 9 Pick. 520.

Gilman says the line agreed on was one still more favorable for us than that to which we claim. Gould and Gilman together show our line.

The evidence of the declarations of Snow, who was deceased, were properly admitted. Whatever the witness might have testified, if alive, he may be shown to have declared. Their declarations need not be confined to matters within their knowledge. In an old country he would not often speak of an original boundary as a thing within his knowledge, and no one can long do so here. 1 Greenl. Ev. 171.

Hearsay is evidence in questions of boundary, and so is the opinion of a surveyor. 6 N. H. Rep. 464; 11 N. H. Rep. 558.

The memoranda of Phillips are not to be excluded upon any technical grounds. 2 Cow. Phil. 528.

Parol evidence of the sale of standing timber is inadmissible. *Olmstead* v. *Niles,* 7 N. H. Rep. 522.

*Perley,* on the same side.

GILCHRIST, J. This is an action of trespass *quare clausum.* Joshua B. Dodge, on the 24th of January, 1825, conveyed lot No. 61, in Bethlehem, to Jonathan P. Randlett, and on the same day Randlett mortgaged the same land to Dodge, to secure the payment of four promissory notes, amounting to $138.15, and interest.

After this conveyance it is plain that Dodge was a mortgagee only.

It does not appear from the case who at this time was in the possession of the lot, or whether any one was in possession of it. Randlett, at some time, went into possession, for we find, from the testimony of Reuben Phillips, that Randlett lived on it several years, and until about a year before James Handy bought it, which would extend Randlett's possession into the year 1834. But it appears that after Randlett left the place, and before Handy bought it, whose purchase was on the 7th day of September, 1835, Simeon Dodge, acting as agent of the mortgagee, Joshua B. Dodge, went upon the land, declaring that he took possession of it for his principal. After having done this he left the place.

This was a sufficient possession by the mortgagee for the purposes which were afterward executed. Whatever a continued actual occupation would have given him, he acquired by this act of his agent, in taking a formal possession ; for the mere act of leaving the land immediately upon the consummation of this formal act, afforded no ground to presume that he intended to abandon the possession ; and as no one disputed his possession, or was

present to enter as soon as the absence of the agent would admit, the mere act of withdrawing from the land was not, in any just sense, an abandonment of the possession, as has been suggested in the argument.

He was not bound, in order to be enabled to transfer a possession, to retain an actual *pedis possessionem*, for the possession that had been acquired by the entry continued in contemplation of law until there was an ouster, by force of some hostile entry.

Matters being in this condition, Dodge, the mortgagee, on the 7th of September, 1835, conveyed the land to James Handy. It does not appear whether the debt secured by the mortgage was transferred to Handy or not. Conceding that it was not, and that, as against the mortgager, the deed was wholly ineffectual as it regarded the title to the land — as was held in *Dearborn* v. *Taylor*, *ante* 153, upon the authority of *Ellison* v. *Daniels*, 11 N. H. Rep. 274, and the other cases cited — it must be borne in mind that Dodge had acquired possession of the land, and that this passed by his deed. It was held, in *Bedell* v. *Loomis*, 11 N. H. Rep. 9, that, where there is no title whatever, nor even color of title in the grantor, but there is possession, this will pass by the deed, and afford, with the covenants of warranty, a sufficient consideration for a note given for the price. And it may be said of the deed of Dodge, as was said of the deed in the case referred to, that it is sufficient to pass a right to occupy so much land as the grantor was in possession of.

It was accordingly held, in *Smith* v. *Smith*, 15 N. H. Rep. 55, that a mortgagee in actual possession might, without any reference to the purposes for which it was taken, and without regard to the question whether anything more than mere possession would pass, convey that possession by deed to another, and that the grantee could hold it against all persons who should not show a better title, and might bring or defend actions in maintenance of that possession.

There can be no doubt, therefore, that the deed, being that of a party in possession, conveyed seizin of the land sufficient to prevail against all parties not showing a better title. *Straw* v. *Jones*, 9 N. H. Rep. 400.

The consideration of the deed from Dodge to Handy was the sum of $200, for which, at the time, Handy gave his promissory note to Dodge, signed by Reuben Phillips as his surety. For the purpose of indemnifying Phillips against this liability, and to save him harmless, Handy mortgaged the land to him. One half the note was payable on the first day of February, 1836, and was paid by Phillips soon after it became due. He after war dsoldhis claim, as he says, to the plaintiff for $100, delivered to him the note, and assigned the mortgage, and the plaintiff then went into possession, as Dodge had done.

Now after Phillips had paid the note, or a part of it, he had a right to hold the land for his security, until he should be reimbursed the money he had paid. He had a claim against the principal, for the payment of which the land was pledged. This claim was transferable, and his interest in the land passed as incident to the claim when transferred. His right to hold the land, and all his interest in the land, depended on the existence of the mortgage. It was his title to the land, and it is the plaintiff's title also, without which he cannot maintain this action. That the plaintiff was the assignee of a debt, and that he was the holder also of a paper duly executed and assuming to assign to him a mortgage, when there was no proof that such a mortgage ever existed, is certainly no evidence of title to land. The party must prove the execution of the deed on which he relies as the evidence of his title; *Pollard* v. *Melvin*, 10 N. H. Rep. 554; and if, as in this case, he rely upon the land passing as an incident to the debt assigned, he must still prove that the land was an incident, which can be done only by proof of the mortgage. The proof of the assignment amounts to nothing, for it must still appear

that there was a mortgage, in order to give effect to the assignment, as conveying an interest in the land.

If the proof of the execution of the mortgage might be dispensed with, a fraudulent or forged deed would be as effectual, for the purposes of the assignee, as any other; for he need only prove the debt, and that he had an instrument made and delivered to him, purporting to be an assignment of a mortgage, and his title would be complete.

Such a mortgage is not proved by the mere production of an office copy. Such copies do not afford evidence of the execution of the deed recorded, except only after proof of the deed under which the party claims the title, whether that deed be made to himself, or to one to whose title he succeeds without a conveyance.

As the evidence of the execution of the mortgage was not required at the trial, the ruling of the court was erroneous, and the verdict must, for this cause, if for no other, be set aside.

But as there are other questions raised in the case, it may be for the interest of the parties at another trial that they should be considered and settled.

The matter of fact in dispute between the parties was the situation of the boundary line of lots No. 61 and No. 56. Evidence was offered by the defendant to prove where it was lot No. 57 adjoins No. 56, and opposite to it is No. 60, adjoining No. 61. Brackett and Gile claimed one half of No. 57, and about fourteen years ago Gilman, the defendant's witness, sold No. 60 to Aaron Brackett. Gilman went with those parties to settle the line between those two lots so claimed by them respectively, and he states that, beginning at the S. W. corner of No. 60, they ran a line to the large birch to which the defendants claimed. But Brackett said that this would not give him " his quantity of land," and they concluded that the marks were not old enough, and they then ran to the small birch, to which

the plaintiff claims. They thought the marks on this older than those on the other, and finally agreed on the spruce as a corner.

This testimony of Gilman is exceptionable on three grounds.

1. Whatever might have been the opinion of Brackett and Gile, as to the comparative ages of the marks on the large and the small birches, the opinion, as such, would not be evidence. It does not appear that they were surveyors, and therefore experts, whose opinions on subjects falling within the range of their peculiar observation and knowledge are regarded as evidence. *Davis* v. *Mason*, 4 Pick. 156.

2. Gilman's testimony, so far as it relates to Brackett's declarations, is merely hearsay. He only states what he heard Brackett and others say about the marks, and the quantity of land that the proposed boundary would give him, and thus it is incompetent.

3. Whatever monument Brackett and Gile might have agreed on as the boundary between their lots, cannot affect the plaintiff. It was as to him *res inter alios.* Owners of adjoining lands may settle their lines by parol, and their agreement, when executed, is conclusive upon them. *Sawyer* v. *Fellows*, 6 N. H. Rep. 107; *Gray* v. *Berry*, 9 N. H. Rep. 473; *Prescott* v. *Hawkins*, 12 N. H. Rep. 27.

Even if it were proved that such an agreement was the result of an examination of the lines, and that the true corner was ascertained to their satisfaction, it would not bind other parties claiming different tracts. It is unreasonable that the opinion formed by two parties, upon evidence not exclusively accessible to themselves, and on a subject upon which they have apparently no means, peculiar to themselves, of forming a correct opinion, should have any influence to conclude others, through the mere accident of their being neighboring proprietors. Indeed, the effect attributed to such an opinion would not be lim-

ited to adjoining owners, but would extend to all whose lots might abut upon the same line, and might, from the accident of having been the earliest opinion formed, be conclusive in cases in which clear evidence did not exist to defeat it. Such evidence ought not to be admitted. Still less would it be admissible where, as in this case, the agreement upon a certain monument might have been the result of a compromise of disputed claims to land, and might have been made, not because the monument appeared to be the true one, but because nothing better could be done.

Another question is, whether the declarations of Snow were admissible. It appears that, twenty years ago, Reuben Phillips went with Snow, who was not living at the time of the trial, upon the land, and Snow said he thought the large birch was not an original corner, because the marks on it were not old enough.

It has been settled, in the case of *Smith* v. *Powers*, 15 N. H. Rep. 546, that the declarations of a person since deceased, as to the boundaries of lands, where, from his situation, he had the means of knowing where the boundaries were, are competent evidence. The case of *Prescott* v. *Hawkins*, decided at the July term, 1845, also in this county, is to the same point. Evidence of this character is necessary on the ground of necessity, because, ordinarily, but few persons are so situated as to possess the means of knowledge. It is also competent, as partaking of the nature of traditionary evidence, and it is, when coming from disinterested persons, intrinsically probable. But no principles on which it is admitted would comprehend the declaration of a deceased expert. They are not necessary, because other experts may be called whose testimony is equally valuable, and worthy of being depended upon. Nor are such declarations traditionary in their character. We are not aware that any decisions have gone so far as to admit them, and are of the opinion that

they ought not to be admitted. The ruling of the court was, therefore, in this particular erroneous.

The plaintiff offered evidence tending to prove, as he alleged, an admission by Stephen P. Webster, since deceased, that the small birch was the corner. Webster, it appears, was ʼthe defendant's grantor, and Philip C. Wilkins testified that he " went upon the land with Webster, at his request, to show him where Wilkins had run the lines; Webster saying that he had talked of selling the lot, and wanted to see the bounds. He said he knew that the hemlock tree on the northeast corner was a corner. The witness showed him the small birch, and went also to the spruce and to the hemlock. He made no objection to the small birch as the corner. He said he was pretty well acquainted with the lines in that town ; examined the witness's field book, and the witness understood that he owned much land in that section of the country."

The declarations of a deceased occupant of land are admissible as evidence, if he had no interest to make such declaration. *Shepherd* v. *Thompson*, 4 N. H. Rep. 213. And his admission of the birch tree as a corner would be admissible on the same principle in this case. Did he admit that the birch tree was the corner, by his silence or forbearance to deny that it was such, on the occasion referred to ?

If we could assume it, as a fact, that Webster knew nothing about this corner, and was only seeking information that he might know something about it, his silence would be no evidence of his assent that the monument pointed out to him was the true boundary of his land. If he knew nothing, the mere passive reception by him of the information which Wilkins communicated would be no evidence of an assent. But we cannot find the fact. It is a question for the determination of the jury, whether he did or did not know. Now, although the facts stated

tend to show that he had no knowledge, this fact is not found by the case. Such evidence, therefore, may properly be left to the jury, with the instruction, if requested, that if they believe that the party is ignorant, and is in search of information, his silence will not amount to an admission. But if otherwise, it will be entitled to some weight, although probably but slight, in aiding them to arrive at a conclusion. As no such instruction was asked for, the evidence was competent, and properly admitted.

There are also some questions relating to damages. Gilman says, that he counted and measured the stumps of the trees cut by the defendants, and gave a true account of them to Phillips. And Phillips says that he entered them correctly on a paper, as Gilman gave them to him, and thinks that paper is now at his house. That paper would be admissible in evidence. It would be, under the circumstances, an original memorandum, authenticated as it is by the testimony of these two witnesses. But a copy of it would not be admissible, without proof that the original had been lost or destroyed. The copy was improperly admitted.

The declaration of the plaintiff, that he had sold the trees to Ely & Redington, was admissible evidence to affect the question of damages. If the fact were as declared to be, the plaintiff should not recover their value, since Ely & Redington would be entitled to an action of trover for them, when severed from the freehold, if the nature of the interest acquired by them through the sale admitted of no different remedy. *Woods* v. *Banks*, 14 N. H. Rep. 101.

The admission was proper evidence of the sale, though not conclusive, of course; and it was the defendants' right that it should be laid before the jury. But the sale, if proved, would have no tendency to defeat the action. This might be maintained if there were no trees at all upon the land, since the gist of the action of trespass

*quare clausum fregit* is the disturbance of the plaintiff's possession, and the removal of the trees merely matter to be proved in aggravation of damages. *Anderson* v. *Nesmith,* 7 N. H. Rep. 167.

But Ely & Redington are not parties to the suit, or in privity with the plaintiff as to the land, even if they purchased the trees of him. Their admissions, therefore, as to the lines of the lot, are incompetent, and were properly rejected. Any purchaser of the trees, or as many purchasers as there were trees, might, on this ground, make admissions as to the lines, and if property in the trees or license to cut and remove them would make the admissions of such persons evidence, the declarations of those to whom they might convey their rights would seem likewise to be competent. The purchaser of the trees may easily be supposed to have inducements to assent to a boundary that the owner of the soil would not admit. He might have no motive for wishing to extend the enjoyment of his license as far as the remotest limit of the land over which it extended.

The instructions of the court on the question of damages were correct. The value of the timber as a personal chattel in the market may be a very inadequate recompense to a person, the value of whose land may depend upon its growing timber. One of the items of the damages done to the land was, that the defendant cut down the trees. The value of young timber, like the value of a growing crop, may be but little when separated from the soil. The land stripped of its trees may be valueless. The trees considered as timber may, from their youth, be valueless, and so the injury done to the plaintiff by the trespass would be but imperfectly compensated, unless he could receive a sum that would be equal to their value to him while standing upon the soil.

The verdict must, for the reasons assigned, be set aside, and a                                        *New trial granted.*